**INDEPENDENCE PARK APARTMENTS, et al., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

No. 94–1A–C.

United States Court of Federal Claims.

Oct. 25, 2004.

---

Everett C. Johnson, Jr., Latham & Watkins, Washington, D.C., for plaintiffs. With him were Richard P. Bress, Susan S. Azad, and Paul A. Allulis, Latham & Watkins, Washington, D.C.

Kenneth M. Dintzer, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Assistant Attorney General Peter D. Keisler, David M. Cohen, Director, Commercial Litigation Branch, and Kenneth D. Woodrow and Michael F. Bahler, Trial Attorneys, Commercial Litigation Branch, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Pending before the court is a motion by the government for reconsideration of the court's decision awarding plaintiffs damages for a temporary regulatory taking after a retrial. *See Independence Park Apts. v. United States,* 61 Fed.Cl. 692 (2004). This case is an offshoot of *Cienega Gardens v. United States,* 331 F.3d 1319 (Fed.Cir.2003) (*"Cienega VIII"*), which originally involved contractual and takings claims arising with federally supported low-income housing projects. The claims of the four plaintiffs in this case were severed from those of the other plaintiffs in *Cienega. See Independence Park,* 61 Fed.Cl. at 694–95. The taking commenced when Congress statutorily barred plaintiffs and other owners of low-income housing properties with federally subsidized mortgages from prepaying those mortgages after twenty years, as the mortgages and regulations of the Department of Housing and Urban Development ("HUD") had provided. Absent prepayment, regulatory restrictions remained in place on the rents that could be charged and the uses that could be made of the properties. The statutory bar on prepayment was first enacted in 1988 and remained in effect from that time until 1996 when the bar was statutorily removed. *See id.* at 695.

The plaintiffs in this case are four "model plaintiffs" that had been selected for an early bellwether trial in the *Cienega*-related cases. That trial occurred in 1996 on their claims for breach of contract, and a judgment was entered in 1997 on those claims. *Cienega Gardens v. United States,* 38 Fed. Cl. 64 (1997) (Robinson, J.) (*"Cienega III"*). After several appeals and consequent actions by the trial court on remand, the Federal Circuit in *Cienega VIII* concluded, among other things, that the model plaintiffs had suffered a temporary taking and that the original damage awards previously entered in their favor in *Cienega III* should be reinstated subject to adjustment. On remand, this court held a five-day trial on adjustments urged by the parties and subsequently entered the decision that the government has moved the court to reconsider.

The government's motion for reconsideration was filed on September 10, 2004, and was timely under Rule 59(e) of the Rules of the Court of Federal Claims ("RCFC"). In essence, the government seeks reductions in the damages awarded to plaintiffs, asserting that damages were overstated because of: (1) a computational error in performing the discounting calculation for the damages of one of the plaintiffs, amounting to $11,663.11, (2) a failure to take account of certain mortgage prepayment penalties totaling $24,169.45, and (3) a failure to net out post-taking mortgage-switching and earthquake-loan costs. Def.'s Mot. at 2–6. As requested by the court, plaintiffs filed a response to the government's motion on September 30, 2004, and the government filed a reply on October 12, 2004. For the reasons set out below, the government's motion is granted in part and denied in part.

## STANDARD FOR RECONSIDERATION

■ Pursuant to rule, the court is empowered to grant reconsideration "for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). Specifically, a motion for reconsideration may be granted when the movant shows " 'either that: (a) an

intervening change in the controlling law has occurred, (b) evidence not previously available has become available, or (c) that the motion is necessary to prevent manifest injustice.' " *Bannum, Inc. v. United States,* 59 Fed.Cl. 241, 243 (2003) (quoting *Citizens Fed. Bank, FSB v. United States,* 53 Fed.Cl. 793, 794 (2002); *Bishop v. United States,* 26 Cl. Ct. 281, 286 (1992)). To succeed "the movant must point to a manifest error of law or mistake of fact" and must do more than merely reassert "arguments which were previously made and were carefully considered by the court." *Henderson County Drainage Dist. No. 3 v. United States,* 55 Fed.Cl. 334, 337 (2003) (internal citations omitted).

## DISCUSSION

The grounds for reconsideration urged by the government relate to the calculation of damages set out in the court's opinion and order for judgment dated August 27, 2004. The computation was made by the court, not the parties, because, as the court noted in its decision, "neither the government's experts nor the plaintiffs' expert [had] appropriately calculated the value of plaintiffs' propert[ies] on a discounted cash-flow basis for the [applicable] takings period." 61 Fed.Cl. at 711. Accordingly, the court undertook "its own discounting calculations to determine the appropriate valuation of plaintiffs' damages as of the end-dates of their respective takings periods." *Id.* Because the court's calculations had not previously been tested through analysis by the parties and their experts, the court has been particularly careful in examining the claims made by the government in its motion for reconsideration, to determine whether the court erred in any respect.

### 1. *Computational error for St. Andrews Gardens.*

The court took account of each year, month, and day that the particular plaintiffs were temporarily barred from prepaying the mortgages on their properties in performing its computation of the discounted present value of the just compensation due each of the four plaintiffs. *See Independence Park,* 61 Fed.Cl. at 711–15. The government contends that the court discounted the damages for one plaintiff, St. Andrews Gardens Apartments ("St.Andrews"), for an extra month resulting in an overstatement of damages by $11,663.11. Def.'s Mot. at 6.[1] Plaintiffs concur. *See* Pls.' Partial Opp. at 2. The court acknowledges its inadvertent error and accordingly grants the motion for reconsideration in pertinent part and reduces the damages awarded to St. Andrews by $11,663.11.

### 2. *Mortgage prepayment penalties.*

■ The government contends that plaintiffs' damages should be reduced by small but discernible amounts to account for mortgage prepayment penalties plaintiffs would have incurred upon prepayment of their mortgages and conversion of the properties to the conventional market. Def.'s Mot. at 5. The pertinent amounts were set out in the testimony of Dr. Darrell Duffie, one of the government's experts, *see* T. Tr. 755–56; DX 1255 at 11–15, and were conceptually acknowledged by plaintiffs' witnesses. *See* T. Tr. 139 (testimony of Carole Glodney, the president of plaintiffs' property manager); T. Tr. 211–12 (testimony of Dr. Richard Peiser, plaintiffs' expert).

The amounts involved are as follows:

| Property | Prepayment penalty | Discounted Value of Prepayment penalty |
| --- | --- | --- |
| INDEPENDENCE PARK | $2,776. | $ 3,682.90 |
| PICO PLAZA | $1,709. | $ 2,153.35 |
| ST. ANDREWS | $9,410. | $13,049.13 |

**1.** The valuation date for a temporary taking is the end of the temporary taking period. *See Independence Park,* 61 Fed.Cl. at 710. To obtain the present value of damages as of the valuation date, damages incurred prior to the end of the temporary taking period must be increased, not decreased, by the discounting factor. In this instance, the present-value calculation thus works in reverse from that employed where future, not past, damages are at issue, viewed from the standpoint of the valuation date. *See id.* at 710, 711 n. 20.

The court also accepts this correction and accordingly reduces the damages awarded for each of the plaintiffs by the discounted value of the prepayment penalty.

3. *Post-taking mortgage-switching expenses.*

█ The final element of the government's motion relates to post-taking expenses consisting of mortgage-switching costs that the government alleges two of the plaintiffs, Sherman Park and St. Andrews Gardens, would have incurred in their conventional operations of their rental properties after the temporary takings periods had ended. Def.'s Mot. at 3–5. In essence, the government is claiming that these plaintiffs would have incurred on an annual basis greater debt-servicing expenses after prepayment of the HUD-assisted mortgages because plaintiffs would have replaced their HUD-insured mortgages that had below-market interest rates with conventional mortgages that would have had at-market interest rates. These two plaintiffs had also obtained loans under the HUD Earthquake Loan Program ("HELP") to restore damage to their properties that occurred during a January 1994 earthquake in Southern California, and prepayment of those HELP loans would have occurred concurrently with the prepayment of the HUD-assisted mortgages, thus also increasing plaintiffs' debt-servicing costs during post-taking operations. *See Independence Park,* 61 Fed.Cl. at 697.

Plaintiffs contest any adjustment for post-taking events in the damages award for the temporary takings period, which ended on May 26, 1995 for St. Andrews Gardens and on May 31, 1995 for Sherman Park. Pls.' Partial Opp. at 3–8. Plaintiffs contend that this court after retrial independently decided the issue adversely to the government and that the government has no good grounds for seeking reconsideration. *Id.* at 5. Plaintiffs also assert that this issue was decided adversely to the government in *Cienega III* and that prior decision stands as the law of the case and bars reconsideration of this issue. *Id.* at 3–5.

It is not disputed that plaintiffs would have incurred higher debt-servicing costs after the HUD-assisted loans had been prepaid. However, the evidence at trial showed that this increased expense would have been matched with, and offset by, increased income from at-market rents as a result of the post-taking operation of the properties in the conventional rental market. At the retrial, Dr. Peiser, plaintiffs' expert, addressed these increased costs and increased revenues *only* because they related to plaintiffs' claims that they had suffered takings-related damages *after* the temporary takings period had ended. *See* T. Tr. 268 (testimony by Dr. Peiser); PX 1197 at 3, 33–34. The St. Andrews Gardens and Sherman Park plaintiffs contended that, prior to enactment of the legislation repealing the statutory prepayment bar, they were "forced" to enter into "Title II Use Agreements" and "Section 8 Housing Assistance Payment ('HAP') contracts" with HUD that effectively extended regulatory restrictions on use of their properties in exchange for an increase in the allowable revenue stream. *Independence Park,* 61 Fed.Cl. at 700. The two plaintiffs asserted that the Use Agreements and HAP contracts did not provide plaintiffs "with the anticipated benefits to alleviate their takings damages due to the government's failure properly to adjust the rental rates ... upward as the market [rose]," *id.,* and that they were entitled to recover this deficiency in revenues as part of their takings damages.

The court rejected plaintiffs' attempt to extend the temporary taking period to reach the post-taking time covered by the Use Agreements and HAP contracts. *Id.* at 700–02. The court did so notwithstanding the testimony by Ms. Glodney, the president of plaintiffs' property manager, that the owners entered into the Use Agreements and HAP contracts as a direct result of the pre-payment bar in the statutes that were in place between 1988 and 1996. *Id.* at 700 (quoting T. Tr. at 97–98 (Ms. Glodney's testimony)). The court took this action on two grounds: first, that plaintiffs' "further requests for relief amount[ed] to breach of contract claims

because they [were] rooted in the allegation that HUD ha[d] not fulfilled its part of the bargains reflected in the newer agreements," *id.* at 701, and, second, that the trial court in *Cienega III* had previously addressed whether the Use Agreements and HAP contracts had been entered into under duress and had held that they were not, and that there was no basis in the retrial to disturb that ruling. *Id.* (citing *Cienega III*, 38 Fed.Cl. at 78–81).[2]

By its arguments respecting post-taking mortgage-switching costs, the government in effect is asking the court on reconsideration to undercut its prior rulings. It would be manifestly unfair to take plaintiffs' increased post-taking expenses into account as an offset to the takings award while barring plaintiffs from consideration of their post-taking revenue claims.[3] Consequently, the court denies the government's motion for reconsideration insofar as post-taking mortgage-switching expenses are concerned.

The government retains an avenue to pursue its claims respecting post-taking mortgage-switching expenses. In its *Independence Park* decision, the court granted plaintiffs leave to amend their complaint in this action to encompass their claims that the government had breached the Use Agreements and the HAP contracts, *Inde-*

---

**2.** The court in *Cienega III* had rejected the government's contention that mortgage-switching expenses had to be taken into account in a damages calculation, ruling that those expenses were coupled with post-taking revenues that might be obtained in the rental market represented either by conventional at-market rents after prepayment had occurred or rents obtainable under the Section 8 HAP contracts. *See* 38 Fed.Cl. at 81 ("[T]he Section 8 HAP contracts are valid and enforceable, and renewal thereof shall not offset plaintiff's calculated damages for any of the properties."); *see also id.* ("[T]he acceptance of HELP assistance shall not further offset plaintiffs' damages any more than already accounted for in Dr. Peiser's damages model.").

**3.** This self-evident proposition was explicitly stated in connection with the court's acceptance of Dr. Peiser's model as a basis for damages. *See Independence Park*, 61 Fed.Cl. at 708 ("[T]he court rejects the portions of Dr. Peiser's model that seek compensation for damages incurred after the original takings period. Accordingly, the court addresses here only those portions of his model that relate to providing an appropriate adjustment to the original damages award."). Footnote 15 of the court's opinion, which refers

*pendence Park*, 61 Fed.Cl. at 701, 718, provided that plaintiffs filed such an amended complaint within thirty days from entry of that decision. *Id.* at 718.[4] As the court observed, "[j]ustice ... requires ... that both plaintiff[s] and defendant have a full and fair opportunity to address the facts associated with the Use Agreements and HAP contracts in terms of a contract action rather than with a takings focus." *Id.* at 701 n. 6. The post-taking mortgage-switching expenses are part and parcel of that future calculus. They have no bearing on the damages for the temporary takings period.

## CONCLUSION

For the reasons stated, the government's motion for reconsideration of the court's decision rendered on August 27, 2004, and reported at 61 Fed.Cl. 692, is granted in part and denied in part. Reconsideration is granted to the extent that the court corrects a computational error made in calculating the discounted present value of just compensation for St. Andrews as of the takings valuation date and adjusts the damages for each of the four plaintiffs for mortgage prepayment penalties. The resulting final damages awards are as follows:

---

to the portions of Dr. Peiser's expert report that address damages during the temporary takings period, *id.* at 709 n. 15 (citing PX 1197 Exs. 3, 3(a)-(d)), should be viewed in that context.

Dr. Peiser also made corrections to his report for mortgage-switching expenses and earthquake loans, T. Tr. 1116, but those calculations appear in his report at PX 1197 as Exs. 4a, 4b, 7a, and 7b and relate only to the plaintiffs' post-taking damages claims (which the court rejected as a part of the takings awards and remitted to future claims for breach of contract). Footnotes 14 and 15 of the court's decision have no bearing on mortgage-switching expenses. *See Independence Park*, 61 Fed.Cl. at 708–09 nn. 14–15. Footnote 14 expressly concerns "pre-payment of the HELP loans" and "prepayment penalties." *Id.* The prepayment penalties are addressed in part 2 above, and are separate from mortgage-switching expenses. *Id.* Similarly, as the prior paragraph shows, footnote 15 also addresses *only* adjustments to Dr. Peiser's model during the time of, not after, the temporary takings period.

**4.** That time for filing an amended complaint has since been extended to thirty days after the court's ruling on the government's motion for reconsideration.

| | Damages from August 2004 decision | Adjustment for computational error | Adjustment for mortgage prepayment penalties | Final damages awards |
|---|---|---|---|---|
| Independence Park | $ 788,028.94 | — | subtract $ 3,682.90 | $ 784,346.04 |
| Pico Plaza | $ 138,761.63 | — | subtract $ 2,153.35 | $ 136,608.28 |
| St. Andrews | $1,638,201.20 | subtract $11,663.11 | subtract $13,049.13 | $1,613,488.96 |
| Sherman Park | $ 859,049.22 | — | subtract $ 5,284.07 | $ 853,765.15 |

The government's motion for reconsideration is otherwise denied. Apart from the adjustments made to the damages awarded as specified above, the decision entered August 27, 2004 remains in effect. The Clerk shall enter an amended final judgment in accord with this opinion.

It is so ORDERED.