TRITEK TECHNOLOGIES, INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Northrop Grumman Corp., Third–Party Defendant,

and

Siemens Dematic Corp., Third–Party Defendant.

No. 02–255C.

United States Court of Federal Claims.

Filed: Feb. 7, 2005.

Originally Filed Under Seal: Jan. 14, 2005.

Frederick A. Tecce, McShea Tecce, P.C., Philadelphia, PA, for plaintiff.

Scott David Bolden, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Timothy Daniel Casey, Fried, Frank, Harris, Shriver & Jacobson, Gregg Francis Locascio, Kirkland & Ellis, Washington, DC, for defendants.

## OPINION AND ORDER

DAMICH, Chief Judge.

This matter is before the Court on the Plaintiff's Motion to Preclude Defendants from Relying Upon Summary Judgment Arguments Not Identified in Response to Plaintiff's Contention Interrogatories or in the Alternative, Motion for Reconsideration. For the reasons discussed below, the Court GRANTS–IN–PART and DENIES–IN–PART Plaintiff's motion.

## I. Background

Tritek Technologies, Inc. (hereinafter "Plaintiff") owns U.S. Pat. No. 5,398,922 ("the '922 patent") directed to a feeder system for a mail sorter. Plaintiff filed a complaint for patent infringement on April 2, 2002, alleging the use or manufacture by the United States Postal Service ("USPS") of the invention claimed in the '922 patent. Defendant noticed third-party Defendants Northrop Grumman Corporation and Siemens Dematic Corporation, who entered this lawsuit pursuant to rules 14(b) and 14(c) of the Rules of the U.S. Court of Federal Claims ("RCFC").

On August 15, 2002, the Court issued its Standard Special Procedures for Cases Under 28 U.S.C. § 1498 (hereinafter "SSPO") which included various procedural requirements intended to promote inexpensive, efficient, and just litigation. Paragraph 11(a) of the SSPO imposes a requirement that "any party claiming patent infringement ... shall serve upon all parties a 'Claim Chart.' " The SSPO further requires that the Claim Chart "ident[ify] ... each ... apparatus ... which allegedly infringes each claim [and] whether such infringement is claimed to be literal or under the doctrine of equivalents." Subsequent amendments to the Claim Chart are governed by paragraph 11(c), which states the "[a]mendments of a Claims [sic] Chart ... may be made only on stipulation of all parties or by order of the court, which shall be entered only upon a showing of excusable subsequent discovery of new information or clearly excusable neglect." (SSPO ¶ 11(c).)

On November 7, 2002, a preliminary status conference was held, during which Defendants stated that "in whatever construction Plaintiff wishes to advance, it is clear that there are certain claim limitations missing in the accused equipment." (Tr. for November 7, 2002 Joint Prelim. Status Conf. at 7.) On November 15, 2002, Plaintiff served a set of interrogatories on the government. Among the interrogatories were contention interrogatories 10 and 11, which generally sought the government's non-infringement contentions. More specifically, interrogatory 10 stated:

> With respect to each Flat Sorter Product or service identified or listed in the answers to these Interrogatories, as to which infringement is denied by USPS, identify each element, feature, functional characteristic or other matter, if any, upon which USPS intends to rely as a point of difference from the products or methods disclosed and claimed in the '922 Patent and describe the purpose and use of such feature, element [sic] functional characteristic or other matter.

Interrogatory 11 requested:

> Identify and describe fully and in detail each and every feature, limitation, and element, if any, of each of the claims of the '922 Patent which USPS contends is omitted from each of the products or services identified in the answers to these Interrogatories, and upon which USPS intends to rely as a point of difference in the defense of the plaintiff's charge of patent infringement.[1]

---

1. For the sake of simplicity, contention interrogatories nos. 10 and 11 will hereinafter be re-

On December 16, 2002, the government responded to the interrogatories, making several objections. In responding to interrogatory 10, the government provided general objections and also specifically stated:

> Further, defendant objects to this interrogatory because it is premature for the Government to produce a non-infringement analysis before it has received plaintiff's Claim Chart and Proposed Claim Construction Statement, both due December 26, 2002. The Government needs to have plaintiff's construction as to each limitation of each asserted claim contained in the Proposed Claim Construction Statement before it could properly prepare any non-infringement analysis. Because plaintiff bears the burden of proving infringement, it would be premature for defendant to produce any non-infringement analysis before it has received plaintiff's comprehensive responses to at least Interrogatory Nos. 1 and 2 of Third Party Defendants' First Set of Interrogatories to Plaintiff Tritek Technologies, Inc., served on November 22, 2002. Defendant will seasonably supplement this interrogatory response.

With regard to interrogatory number 11, Defendant stated that "the Government's response to this interrogatory is the same as its response to Interrogatory No. 10 above."

On December 26, 2002, pursuant to paragraph 11 of the SSPO, Plaintiff filed its Claim Chart identifying each claim of the '922 patent Plaintiff believed was infringed. In the Claim Chart, Plaintiff stated:

> [T]he accused devices literally infringe each of the asserted claims. This is true regardless of whether the claims are construed as 'means plus function' claims pursuant to 35 U.S.C. § 112, ¶ 6 [sic]. To the extent that the defendants seek to wrongfully limit the claims under the guise of claim construction, there may be an issue as to whether some elements of the claims are found in the accused device under the doctrine of equivalents.

(Plaintiff's Claim Chart at 2.) Plaintiff then proceeded to specifically identify seven claim elements which Plaintiff believed were found

equivalently in the accused device, the AFSM–100.

On January 31, 2003, Defendants filed a Motion for Summary Judgment of Non-infringement (hereinafter "the Original MSJ"). This motion was filed prior to claim construction proceedings. On June 9, 2003, the Court issued an order staying the Original MSJ, because the Defendants' non-infringement arguments relied on claim limitations containing terms with disputed meanings. After receiving briefs and conducting oral argument on claim construction, the Court issued an Opinion & Order on Claim Construction ("the Markman Order") on December 9, 2003. The Markman Order detailed the meanings of disputed terms in the '922 patent, and also required the parties to file a joint status report no later than December 23, 2003. *Tritek Technologies, Inc. v. United States*, 2004 WL 1299571 (Fed.Cl.). The status report was filed, and included among other things, a stipulation by the parties that Plaintiff would be permitted to serve amendments to the Claim Chart, and Defendants would be permitted to serve amendments to their Response Chart until January 9, 2004. Neither an amended Claim Chart nor an amended Response Chart was filed.

In light of the Markman Order, Defendants filed a Renewed Motion for Summary Judgment (hereinafter "the Renewed MSJ") on April 2, 2004. In the Renewed MSJ, Defendants argued for precluding Plaintiff from offering any argument of infringement under the doctrine of equivalents not specifically set forth in the Claim Chart. Defendants contended that because Plaintiff specifically listed only five limitations in the original Claim Chart for which it alleged infringement under the doctrine of equivalents, Plaintiff was barred from asserting the doctrine for any additional limitations. (*See* Memorandum in Support of Defendants' Renewed Motion for Summary Judgment of Non–Infringement at 8 [hereinafter "Defs.' Mem. to Renewed MSJ"].) In response, Plaintiff argued that the phrase "[t]o the extent that the defendants seek to wrongfully limit the claims under the guise of claim

ferred to collectively as "the contention interrogatories."

construction, there may be an issue as to whether some elements of the claims are found in the accused device under the doctrine of equivalents," included in the claim chart, was sufficient to preserve any doctrine of equivalents arguments that Plaintiff might choose to make. (*See* Tritek Technologies, Inc.'s Response to Defendants' Renewed Motion for Summary Judgment of Non–Infringement at 24 n. 14 [hereinafter "Pl.'s Resp. to Renewed MSJ"].)

On September 29, 2004, the Court held oral argument on the Renewed MSJ, during which it spent considerable time hearing the parties' positions on the issue of argument preclusion. After considering the parties positions, the Court ruled from the bench [2] that Plaintiff was precluded from offering doctrine of equivalents arguments directed to claim limitations not specifically set forth in the Claim Chart. (September 29, 2004 Oral Arg. Tr. at 37–39.) In the Bench Ruling, the Court noted that the SSPO was designed to promote inexpensive, efficient, and just litigation. The Claim Chart requirement was designed to prevent a "shifting sands" approach to patent litigation. The Court further noted that the Claim Chart should represent a final commitment to the theories of infringement that would be pursued. Regarding Plaintiff's statement in the Claim Chart that allegedly preserved its right to assert the doctrine of equivalents, the Court held that if a one-sentence reservation of a universal right to assert the doctrine were sufficient, the Claim Chart requirement would be essentially meaningless. The Court further found that Plaintiff's failure to amend the Claim Chart during the stipulated time subsequent to the Markman Order did not constitute clearly excusable neglect.

On October 15, 2004, Plaintiff filed the instant Motion to Preclude Defendants from Relying Upon Summary Judgment Arguments Not Identified in Response to Plaintiff's Contention Interrogatories or in the Alternative, Motion for Reconsideration (hereinafter "Pl.'s Motion") asking the Court to revisit the issue of preclusion of arguments. On November 8, 2004, Defendants filed their response (hereinafter "Defs.' Resp."). Plaintiff's reply ("Pl.'s Reply") was filed on November 23, 2004, along with a motion seeking oral argument in connection with the matter before the court. On December 10, 2004, Defendants filed a Motion for Leave to File Surreply Addressing New Arguments and Misrepresentation in Tritek's Reply on Its Motion for Preclusion and Reconsideration. The Court granted the Motion for Leave on December 16, 2004, and Defendants' Surreply ("Defs.' Surreply") was filed that day. On December 27, 2004, Plaintiff's submitted a Response to Defendants' Motion for Leave including a Corrected Reply in Support of Its Motion for Preclusion and Reconsideration.

## II. Plaintiff's Motion

### A. Preclusion of Defendants' Non-infringement Arguments

In its motion, Plaintiff contends that the government failed to properly supplement its response to contention interrogatory numbers 10 and 11, which sought the government's non-infringement contentions. The government originally objected to the interrogatories, stating its view that it was "premature for the Government to produce a non-infringement analysis before it had received plaintiff's Claim Chart and Proposed Claim Construction Statement .... Defendant will seasonably supplement this interrogatory response." (*See* Dec. 16, 2002 Response of United States Postal Service to Plaintiff's First Set of Interrogatories Directed to Defendants, United States of America and the United States Postal Service at 20–22.) Even after service of Plaintiff's Claim Chart and the subsequent Markman Order, the government did not supplement its responses, an action Plaintiff alleges was required by RCFC 26(e)(2).[3] Because Defen-

---

**2.** The ruling from the bench at the September 29, 2004 hearing will be hereinafter referred to as "the September Bench Ruling," or simply "the Bench Ruling."

**3.** RCFC 26(e) states in relevant part:

(2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective infor-

dant's objection to the interrogatory rested on the fact that it was "premature" to conduct the non-infringement analysis without having received Plaintiff's Claim Chart, Plaintiff argues that once the Claim Chart and Proposed Claim Construction Statement were served on Defendant on December 26, 2002, the basis for the government's objection was eliminated. According to Plaintiff, the government was obligated to seasonably amend its interrogatory responses because upon receiving Plaintiff's Claim Chart and proposed claim construction, it had the necessary information to perform the non-infringement analysis required to develop its non-infringement position.

Because the government failed to amend its responses to the contention interrogatories as required by RCFC 26(e)(2), Plaintiff contends that RCFC 37(c)[4] necessarily precludes Defendants from advancing any arguments in the Renewed MSJ, because none were disclosed in its interrogatory response.

### B. Motion for Reconsideration

In the alternative, Plaintiff asks that the Court reconsider the September Bench Ruling. Plaintiff argues that while it would be appropriate for the Court to preclude Defendants' summary judgment arguments that rely upon non-infringement contentions not disclosed in discovery responses, it alternatively could require the government to supplement its interrogatory responses to provide its non-infringement contentions, and then permit Plaintiff to amend the Claim Chart to provide its doctrine of equivalents arguments in response to Defendants' non-infringement position.

Plaintiff further contends that allowing it to amend the Claim Chart at this time is consistent with decisions interpreting the Patent Local Rules promulgated by the United States District Court for the Northern District of California (hereinafter "Northern District").[5] Plaintiff points to several decisions that allegedly demonstrate that the Northern District will only bar amendments to claim charts at the conclusion of discovery and claim construction.[6] Plaintiff argues that because discovery is still open in this case, the Court should allow it to amend the Claim Chart.

Lastly, in its reply brief, Plaintiff raises a new argument not presented in its original motion. Plaintiff contends that the Court should also reconsider its ruling because it fully complied with its obligations under the SSPO. Plaintiff argues that the SSPO does not require it to provide specifics as to which claim elements are alleged to be infringed under DOE, but rather it only requires that it state whether infringement is literal or under the DOE. Plaintiff contends that it satisfied the requirement by placing the following statement in its Claim Chart:

> To the extent that Defendants seek to wrongfully limit the claims under the guise of claim construction, there may be an issue as to whether some elements of the claims are found in the accused device under the doctrine of equivalents.

Plaintiff believes that in specifically identifying particular elements in the Claim Chart as infringed under DOE, it went beyond the requirements of the rule.

---

mation has not otherwise been made known to the other parties during the discovery process or in writing.

4. RCFC 37 states in relevant part:
 (c) Failure to Disclose; False or Misleading Disclosure; Refusal to Admit
 (1) A party that without substantial justification fails to ... amend a prior response to discovery as required by RCFC 26(e)(2), is not, unless such failure is harmless, permitted to use ... on a motion any ... information not so disclosed.

5. The Patent Local Rules for the Northern District of California were used as a model in the

creation of the Standard Special Procedures Order (SSPO) for Cases Under 28 U.S.C. § 1498, Effective May 1, 2002.

6. Plaintiff's reliance on these cases is misplaced. These arguments were presented and rejected during the September Hearing, and a motion for reconsideration should not be used to merely reargue positions previously rejected. *See Stelco Holding v. United States*, 45 Fed.Cl. 541, 542 (2000). Further, the cases Plaintiff cites provide little guidance to the Court, as they are factually distinguishable from the case at bar. Finally, as this issue is committed to the sound discretion of the Court, non-binding precedent is typically not helpful.

### III. Defendants' Response

Unsurprisingly, Defendants make several arguments in opposition to Plaintiff's motion. Defendants argue that because Plaintiff has not demonstrated an actual discovery violation or any harm that resulted from any alleged violation, there is no basis for precluding Defendants' non-infringement arguments. In response to Plaintiff's request that the Court reconsider its previous decision to preclude Plaintiff's doctrine of equivalents arguments, Defendants contend that the motion should be denied because Plaintiff simply reargues the position it took during oral argument, and that the Court's decision was well-supported in the law.

Defendants argue that this issue was not raised timely because Plaintiff had represented to both Defendants and the Court that it had no issues with the government's interrogatory responses in a Joint Status Report filed on December 23, 2003. The status report stated that "Tritek has propounded one set of interrogatories .... The Government timely responded to those interrogatories, and Tritek has raised no issue as to the sufficiency of the Governments interrogatory responses." (December 23, 2003 Joint Status Report at 5.) Defendants argue that they properly took this statement as an indication that their discovery obligations had been fulfilled and filed the Renewed MSJ on that basis. Because Plaintiff had the opportunity to raise this issue then, its failure to do so constitutes a waiver of the issue.

Defendants also contend that the Court should not even entertain Plaintiff's motion because Plaintiff failed to attempt to resolve this issue informally with Defendants as required by the Paragraph 14(f)(i) of the SSPO which states in relevant part: "Before petitioning the court to resolve a discovery dispute or to impose sanctions for discovery abuses, counsel must attempt to resolve the problem with opposing counsel." Defendants characterize Plaintiff's Motion as a discovery dispute, and point to several cases in which discovery sanctions were denied because the moving party failed to abide by the informal resolution requirements in the local rules of the court. Because Plaintiff remained silent for almost two years, and denied Defendants any opportunity to correct the alleged discovery violation, Defendants submit that Plaintiff's Motion seeking preclusion should be denied. Defendants further point out that although the allegedly deficient discovery response was provided back in December 2002, Plaintiffs never sought supplementation of the response, and it never filed a motion to compel a response under RCFC 37(a).

Defendants contend that Plaintiff has failed to demonstrate any violation by Defendants because their non-infringement positions were disclosed to Plaintiff prior to filing the Renewed MSJ. Defendants argue that their contentions were made known to Plaintiffs in the Original MSJ filed on January 31, 2003, and in their claim construction briefing. As a result of these informal disclosures, Defendants argue that Plaintiff was well-aware of Defendants' non-infringement contentions, and as a result, no discovery violation took place. Defendants also accuse Plaintiff of seeking to impose a double standard, as its own discovery responses were not formally supplemented, but rather incorporated the Claim Chart by reference.

Defendants also argue that even if there were a discovery violation, Plaintiff suffered no harm from the violation. Defendants point out that Plaintiff was given ample time to respond to the Renewed MSJ, and that it did not demonstrate how its opposition to the Renewed MSJ was rendered inadequate by Defendants' alleged violation.

Lastly, Defendants argue that the September Bench Ruling should not be reconsidered because Plaintiff's Motion merely rehashes arguments previously rejected in the September Bench Ruling, and for that reason, the Motion for Reconsideration should be denied.

### IV. Motion to Preclude

Defendants presented five arguments for non-infringement in the Renewed MSJ. In order to decide whether these arguments should be precluded under RCFC 37(c)(1), the Court must first determine whether these arguments use information that was sought by the contention interrogatories and are thus subject to the disclosure require-

ments of RCFC 26(e)(2). If the non-infringement arguments are subject to RCFC 26(e)(2), the Court must then determine whether the government's responses to these interrogatories were sufficient. If so, the Court's inquiry ends because in order to preclude an argument under RCFC 37(c)(1), Plaintiff must demonstrate a violation of RCFC 26(e)(2). If the government's responses to the interrogatories were not sufficient, the Court then must consider whether the information requested was otherwise made known to the Plaintiff either through the discovery process or in writing. Finally, if a violation of the discovery rules has indeed taken place, the Court must determine whether the violation was harmless or substantially justified.

### A. Was there a Violation of RCFC 26(e)(2)?

The Court's decision on Plaintiff's motion to preclude is guided by RCFC 26(e)(2). RCFC 26(e)(2) states in relevant part:

> A party is under a **duty seasonably to amend** a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect **and** if the additional or corrective information **has not otherwise been made known to the other parties during the discovery process or in writing.**

RCFC 26(e)(2) (emphasis added). By its clear language, RCFC 26(e)(2) places a burden on the answering party to supplement an answer to a prior response if it learns that the response, even if correct at the time given, has become incomplete. The fact that this duty lies squarely on the shoulders of the answering party makes sense, because the answering party is in a better position to know when an previous response has become incomplete or inaccurate. To place a burden on the interrogating party to somehow divine that new information has rendered a previous response incomplete, would be unfair. RCFC 26(e)(2) allows two exceptions to the duty to seasonably amend. First, if the information has otherwise been made known to the other parties during the discovery pro-

cess, the answering party need not amend the prior response. Second, if the information has otherwise been made known to the other parties in writing, the answering party need not amend or supplement its response.

### 1. Was there a Prior Response?

The contention interrogatories at issue were originally objected to as being premature because they required a non-infringement analysis prior to the receipt of Plaintiff's proposed claim construction arguments. In its objection, the government indicated that it would "seasonably supplement th[e] interrogatory response." In spite of the government's objection, it is clear that the government provided at least a preliminary response to Plaintiff's contention interrogatories along with an indication that it would satisfy its duty to seasonably amend its response as required.

### 2. Did the Response Become Materially Incorrect or Incomplete?

It seems clear that the government's response to the contention interrogatories became incomplete or inaccurate at the time Defendants developed concrete theories of non-infringement upon which they intended to rely. As noted above, in responding to the contention interrogatories, the government stated on December 16, 2002, that "it would be premature to produce a non-infringement analysis before it has received plaintiff's Claim Chart." On December 26, 2002, Defendants received Plaintiff's Claim Chart. Thus, it seems reasonable to conclude that upon receiving Plaintiff's Claim Chart, the government was in a position to begin the process of determining its non-infringement theories. In any event, it is indisputable that Defendants' knew of at least some of their specific non-infringement contentions by January 31, 2003, when they filed the Original MSJ, seeking summary judgment of non-infringement on the basis of five non-infringement contentions.

### 3. Did the Government Know that the Response was Incomplete?

On November 7, 2002, Defendants stated during a preliminary status conference that "in whatever construction Plaintiff wishes to advance, it is clear that there are certain

claim limitations missing in the accused equipment." This statement strongly suggests that as early as November 7, 2002, the government believed that certain elements were missing from the accused device. It is indisputable, however, the government was on notice that its responses to the contention interrogatories were incomplete no later than March 12, 2003, when Plaintiff filed its response to the Original MSJ. There, Plaintiff unambiguously raised the issue of the incomplete interrogatory responses:

> Prior to the December 26, 200[2] due date for its Claim Chart and Claim Construction Statement, Tritek sought Defendants' position regarding missing elements of the asserted claims.... The USPS refused to identify the missing elements. Based upon Defendants' failure to properly respond to plaintiff's interrogatories, Defendants should be precluded at this stage from contending that any elements are missing from the accused device.

(Pl.'s Resp. to Original MSJ at 7–8.) Thus, it is clear that the government was on notice that its responses to Plaintiff's contention interrogatories were insufficient.

4. Was the Corrective Information Otherwise Made Known to Plaintiff through the discovery process or in writing?

Defendants argue that the five non-infringement arguments[7] presented in the Renewed MSJ were properly disclosed in documents other than formal discovery responses—specifically in the Original MSJ and in its claim construction briefing. Although Defendants are correct that non-infringement arguments 1 and 5 were "otherwise made known" to Plaintiff in writing, the Court finds that non-infringement contentions 2–4 were not presented in sufficient detail to satisfy the "otherwise made known" exception to RCFC 26(e)(2).

Defendants' non-infringement arguments 1 and 5 were clearly "otherwise made known" to Plaintiff through the Original MSJ. Non-infringement argument 1 alleges that AFSM–100 lacks a "stack maintaining mechanism" because it does not maintain a vertical stack. This argument was clearly presented in the Original MSJ, where Defendants argued that the AFSM–100 did not maintain items of mail in a vertical side by side stack as required by each of the asserted claims. (See Defs.' Mem. to Original MSJ at 8–14.) Similarly, non-infringement argument 5, which alleges that the AFSM–100 has neither a switch that senses both an item of mail and the paddle, nor a switch in the path of movement of the paddle, was fully presented in the Original MSJ as well. (See Defs.' Mem. to Original MSJ at 33–38.)

Plaintiffs argue that Defendants should not be permitted to rely on the Original MSJ as providing adequate notice under RCFC 26(e)(2), because presenting those arguments in the Original MSJ also violated RCFC 26(e)(2). The Court disagrees. Nothing in the text or underlying purpose of the rule suggests that arguments presented in the Original MSJ cannot be used to provide sufficient notice, even if they violated RCFC 26(e)(2) when filed. The rule simply provides that information that has "otherwise been made known to the other parties during the discovery process or in writing" satisfies the rule. The Original MSJ, even if not considered part of the discovery process, clearly can be considered "in writing." Moreover, the overriding purpose of broad discovery rules is to prevent unfair surprise. Here, non-infringement arguments 1 and 5 were clearly stated in the Original MSJ. Plaintiff cannot plausibly argue that Defendants' choice to reassert these arguments in the Renewed MSJ violated the spirit and purpose of RCFC 26.

Plaintiff further contends that even if Defendants can rely on disclosures from the Original MSJ, its arguments set forth in the Renewed MSJ must be stricken because the Original MSJ did not provide all of the information requested by Interrogatory 10. The interrogatory sought each "feature, functional characteristic or other matter" of the AFSM–100 which the government intended to rely upon as a point of difference, along

---

7. Defendants' non-infringement arguments from the Renewed MSJ will be hereinafter referred to as "non-infringement argument *n*" where *n* corresponds to the argument's ordering in the Renewed MSJ.

with the "purpose and use of [the] ... element." Even if this were true, Plaintiff has failed to demonstrate how the allegedly missing information was used in support of the Renewed MSJ. Plaintiff concedes that non-infringement argument 1 was fully set forth in the Original MSJ. (Pl.'s Reply at 9["[W]ith the exception of the stack maintaining mechanism element ... [the Renewed MSJ] asserted that completely different elements were missing ...."].) Thus, any information used in the Renewed MSJ was already disclosed in the Original MSJ, and thus satisfies the requirement of RCFC 26. Plaintiff also completely fails to address how Renewed MSJ non-infringement argument 5 relies upon information not fully disclosed in the Original MSJ—and with good reason. Non-infringement argument 5 in the Renewed MSJ is virtually identical to the argument presented in the Original MSJ. As a result, all information used in support of non-infringement argument 5 was "otherwise made known" to Plaintiff by the Original MSJ.

Non-infringement argument 3 states that the alleged AFSM–100 initial hold means and transfer means do not act on the "downstream-most item of mail." Defendants argue that this argument was fully disclosed in the Original MSJ when it "explained that the AFSM–100's 'initial hold means' and 'transfer means' act on a piece of mail that has fallen off the stack on the horizontal run of its feed conveyor belt (*Id.* at A221)." (Defs.' Resp. at 8.) The Court disagrees. The statement pointed to by Defendants was not offered as a basis of non-infringement in the Original MSJ. Instead, it merely described the operation of the AFSM–100 in the context of asserting non-infringement on the basis of the absence of a "vertical stack" in the accused device. Thus, it is clear that this non-infringement argument 3 was not otherwise made known to Plaintiff prior to the filing of the Renewed MSJ.

Defendants argue that non-infringement arguments 2 and 4 were otherwise made known to Plaintiff through its claim construction briefing. At the outset, the court notes that claim construction briefing is not a setting in which parties typically advance non-infringement arguments. Rather, claim construction briefing is used to help the court construe the meaning of disputed terms in the patent, without comparison to the accused device. *Optical Disc. Corp. v. Del Mar Avionics,* 208 F.3d 1324, 1333 (Fed.Cir. 2000) ("claim scope is determined without regard to the accused device"); *Young Dental Mfg. Co., Inc. v. Q3 Special Prods., Inc.,* 112 F.3d 1137, 1141 (Fed.Cir.1997) ("An infringement analysis involves two steps. First, the claim scope is determined without regard for the accused device."); *see also Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1580 (Fed.Cir.1991) ("In 'claim construction' the words of the claims are construed independent of the accused product...."). Defendants argue that the arguments they advanced during claim construction made their non-infringement contentions clear to Plaintiff. However, nowhere in the claim construction briefs did Defendants specifically point to the absence of any disputed term in the accused AFSM–100. Defendants merely argued that certain claim terms should be accorded certain meanings. Thus, an inferential leap was required on the part of Plaintiff, in order for it to perceive (from the claim construction briefing alone) Defendants' specific non-infringement contentions.

While information may be considered to have been "otherwise made known" where the alleged disclosure is clear and unambiguous, where the alleged disclosure is not sufficiently clear, it cannot satisfy the requirements of RCFC 26. The case of *Gutierrez v. AT & T Broadband, LLC,* 382 F.3d 725 (7th Cir.2004), although not binding on this Court, persuasively illustrates this distinction. The dispute in *Gutierrez* centered on the defendants' alleged concealment of their true corporate identity (in violation of federal law) while collecting a debt from plaintiffs. The defendants won on summary judgment in the district court, but the plaintiffs appealed, alleging that three affidavits submitted in support of the defendants' motion for summary judgment should have been precluded under rule 37(c), because they were submitted by affiants not identified as potential witnesses

through the defendants' rule 26[8] disclosures. *Id.* at 732–34. The first affidavit is not relevant, so it will not be discussed. The defendants' second affiant, was not identified as a potential witness in discovery responses. However, during a deposition, and in response to questions posed by the plaintiffs that were "clearly directed at finding additional witnesses" who would assist in the discovery process, he was specifically identified as a person with relevant information. *Id.* at 732. The court allowed this affidavit, holding that the deposition testimony "should have alerted the plaintiffs that [the affiant] would have more and better information . . . ." *Id.*

The defendants' third affidavit, in contrast, was precluded under rule 37(c) even though the plaintiffs admitted that they "had seen [the third affiant's] name on a service mark application they uncovered through [an] Internet search of the United States Patent and Trademark Office's website . . . ." *Id.* at 734. The service mark application in question showed that the third affiant was the attorney of record for the application. However, defendant's 30(b)(6) witness stated that he did not know who the third affiant was during his deposition. The third affiant turned out to be the trademark counsel for the defendants' parent company. Because the central issue in the case dealt extensively with corporate trademarks and service marks, that the attorney of record possessed information pertinent to the case would seem an easy inference for the plaintiffs to have made. Nevertheless, the court held that the service mark application was not enough to put the plaintiffs on notice to satisfy the requirements of rule 26, in part because no witness explicitly indicated that the third affiant possessed relevant information.

Although Plaintiff's notice in this instance falls somewhere in between the two situations addressed in *Gutierrez*, it is clearly more akin to the situation involving the third affidavit. Although Defendants argue that non-infringement arguments 2 and 4 were disclosed to Plaintiff in claim construction

filings, Defendants failed to allege in these filings that these were specific bases for non-infringement. Non-infringement argument 2 states that AFSM–100 does not infringe because its transfer means does not "extend juxtaposed across a remainder of said discharge end." Defendants made clear in their claim construction filings that they believed that the proper construction of the claims required that the transfer means extend across the remainder of the discharge end. However, they did not allege that the AFSM–100 actually failed to meet this requirement until they filed the Renewed MSJ. Defendants' position with respect to non-infringement argument 4 similarly fails. Non-infringement argument 4 alleges that the AFSM–100 transport belt is not intermittently perforated as required by claim 13. Defendants allege that this non-infringement position was made clear during claim construction proceedings when they maintained that "this limitation covers . . . a vertically mounted transport belt having a plurality of holes along a portion [less than the entirety] of its length . . . ." (May 1, 2003 Joint Claim Const. Statement at 19.) Unfortunately for Defendants, this argument also overlooks their failure to allege that the AFSM–100 failed to meet this claim limitation before filing the Renewed MSJ.

Although Defendants suggest that Plaintiff should have been able to identify these non-infringement positions based on the claim construction filings, the alleged disclosure was not clear and unambiguous, but rather required an inference on the part of the Plaintiff similar to that which was frowned upon in *Gutierrez*, discussed *supra*. Defendants also argue that Plaintiff's inspection of the AFSM–100 should have made them further aware of Defendants' non-infringement arguments. But this argument illustrates the problem with Defendants' theory. In effect, Defendants suggest that the cumulative knowledge gained by Plaintiff from the combination of the claim construction briefing, Plaintiff's inspection of the AFSM–100, and the Court's Markman Order, should have been sufficient to allow Plaintiff to put the

---

**8.** Although this case deals with rule 26(e)(1) rather than 26(e)(2), the "not otherwise made known" language in each is identical, and rule 37(c) (discussed at section IV.B, *infra*) applies to both sections.

pieces together to ascertain Defendants' non-infringement contentions. It would be unfair to penalize Plaintiff for failing to deduce Defendants' non-infringement contentions from these various sources, when a simple, direct (and required) response to the contention interrogatories by the government would have avoided this issue entirely. Accordingly, the Court finds that non-infringement arguments 2 and 4 were not otherwise made known to Plaintiff prior to Defendants' filing the Renewed MSJ.

### B. Was the Violation Substantially Justified or Harmless Under RCFC 37?

■ Violations of RCFC 26 are generally addressed by RCFC 37 which states in relevant part:

> (c) Failure to Disclose; False or Misleading Disclosure; Refusal to Admit
>
>> (1) A party that without substantial justification fails to ... amend a prior response to discovery as required by RCFC 26(e)(2), is not, **unless such failure is harmless,** permitted to use ... on a motion any ... information not so disclosed.

RCFC 37(c)(1) (emphasis added). The Federal Circuit does not appear to have fashioned a test for applying the exclusion provisions of RCFC 26 and 37.[9] Thus, this Court does not have binding precedent as a guide. However, other circuit courts that have applied the RCFC 37 counterpart in the Federal Rules of Civil Procedure have held that the sanction of exclusion [under rule 37] is automatic and mandatory unless the sanctioned party can show that its violation [of rule 26] was either justified or harmless. *Finley v. Marathon Oil Co.,* 75 F.3d 1225, 1230 (7th Cir.1996); *Klonoski v. Mahlab,* 156 F.3d 255, 269 (1st Cir.1998). The burden is on the party facing sanctions to prove that the violation was justified or harmless. *Wilson v. Bradlees of New England,* 250 F.3d 10, 21 (1st Cir.2001); *Yeti by Molly Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1107 (9th Cir.2001). In determining whether a failure to disclose can be considered substan-

tially justified or harmless, the circuit courts have developed various multi-pronged tests. Although each variation has certain idiosyncracies, they largely seem to address at least some combination of the following factors: (1) surprise to the party against whom the evidence would be offered; (2) the importance of the information withheld; and (3) the explanation for the failure to disclose the information. *See generally S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.,* 318 F.3d 592, 596 (4th Cir.2003); *Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir.1999); *Reilly v. Natwest Mkts. Group Inc.,* 181 F.3d 253, 269 (2d Cir.1999).

#### 1. Surprise

This prong of the test seems to largely coincide with the "not otherwise made known" requirement of RCFC 26(e)(2). Plaintiff certainly was aware that Defendant would assert various non-infringement arguments on summary judgment, so in that sense it was not surprised. However, with respect to the three specific non-infringement arguments (2, 3, and 4) not disclosed or "otherwise made known" to Plaintiff in accordance with RCFC 26(e)(2), Plaintiff was surprised to the extent that non-infringement contentions were alleged for the first time. Defendants' point out several cases where courts have refused to impose the preclusion sanction under rule 37 where the party seeking preclusion was not "caught flat-footed," or otherwise had "ample opportunity to prepare" a response to the newly disclosed information. *See, e.g., Brennan's Inc. v. Dickie Brennan & Co.,* 376 F.3d 356, 375 (5th Cir. 2004); *Rowland v. Am. Gen. Fin., Inc.,* 340 F.3d 187, 195 (4th Cir.2003); *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,* 2004 WL 2066823 (D.Minn. Sept. 7, 2004). However, none of these cases apply to the case at bar. Each was premised on the fact that the moving party either had sufficient time to adequately prepare its case to address the new information, or actually was familiar with (or in possession of) the information prior to the late disclosure. As dis-

---

**9.** In the instances where the Federal Circuit has considered similar issues, it has done so in patent cases appealed from federal district courts.

Because discovery violations are not "unique to patent law," the circuit has applied the law of the regional circuit to decide these issues.

cussed above, non-infringement arguments 2, 3, and 4 were not disclosed to Plaintiff prior to the filing of the Renewed MSJ, nor can Plaintiff be charged with prior knowledge of these specific contentions. Defendants' introduction of non-infringement arguments 2, 3, and 4, while not utterly unexpected, surely could not have been not fully anticipated by Plaintiff before they received the Renewed MSJ.

### 2. Importance of Withheld Information

The withheld information was important to Plaintiff's case because it was information that Plaintiff needed to refine its theories of infringement and modify the Claim Chart accordingly. Defendant argues that Plaintiff should have raised the issue of the incompleteness of the discovery responses earlier, and that in failing to do so, it waived its rights. (Defs.' Resp. at 2–4.) Plaintiff's response, that it did not raise the issue earlier because Defendants' failure to respond was consistent with its infringement contentions and general theory of the case, seems somewhat contrived. Plaintiff certainly did not expect that Defendants were conceding infringement because they had not responded to the contention interrogatories. Nevertheless, Plaintiff is correct that the duty to supplement its responses to the contention interrogatories was on Defendants, because they are best situated to know if and when their original response became incorrect or incomplete. Plaintiff certainly could have filed a motion to compel as Defendants suggest, but it was not required to do so. As noted above, the preclusion sanction is automatic and mandatory if RCFC 26(e)(2) is violated, and does not require a prior motion to compel.

Defendants argue that Plaintiff has not suffered the prejudice required to support preclusion under RCFC 37(c). (Defs.' Resp. at 10.) Defendants contend that Tritek was given ample opportunity to respond to the Renewed MSJ and, in fact, sought and received an enlargement of time to respond. Defendants fail to consider that the prejudice need not be directly related to the motion at issue, but rather to the case as a whole. As the Fourth Circuit suggested in *Rowland, supra,* prejudice is embodied in anything that impairs the party's "ability to prepare for and conduct [the] case at trial." *Rowland,* 340 F.3d at 196. Here, the prejudice is quite clear. Plaintiff's ability to conduct its case was severely impaired by its inability to assert the doctrine of equivalents resulting from the September Bench Ruling. The more important question is whether this prejudice was suffered as a result of Defendants' discovery violation. It is not enough for Plaintiff merely to show that Defendants' failed to disclose information required by RCFC 26(e)(2). The prejudice suffered by Plaintiff must be directly attributed to Defendants' failure to disclose.

The Court finds that Plaintiff was prejudiced by Defendants' discovery violation because the violation prevented Plaintiff from having a meaningful opportunity to timely amend the Claim Chart with respect to non-infringement arguments 2, 3, and 4. Defendants argue that because the burden of proof on the issue of patent infringement was on Plaintiff, it was Plaintiff's responsibility to set forth all of its theories of infringement in the Claim Chart. (Defs.' Resp. at 7.) This argument is unavailing, because it is unreasonable to expect Plaintiff to allege the doctrine of equivalents as an alternative ground for infringement of a particular claim element, and update the Claim Chart accordingly, if it has no reason to believe that Defendants were challenging its literal infringement contention as to that element. The Court has found that Plaintiff cannot be charged with knowing, prior to receiving the Renewed MSJ, that claim limitations related to non-infringement arguments 2, 3, and 4 were at issue. As a result, Plaintiff's first meaningful opportunity to amend the Claim Chart arrived after the time to do so had expired.

### 3. Explanation for the Failure to Provide the Information

Defendants argue that it did not provide answers to the contention interrogatories because Plaintiff deliberately chose not to make it an issue by seeking supplementation of the responses, or by filing a motion to compel discovery under RCFC 37(a) (Defs.' Resp. at 4–5.) Were this the entire story, this factor might favor Defendants. However, there is

more. Although Plaintiff did not file a motion to compel discovery, it clearly placed Defendants on notice that its interrogatory responses were incomplete in its Response to the Original MSJ. (Pl.'s Resp. to Original MSJ at 7–8.) Thus, for eighteen months, Defendants were aware that their responses were materially deficient, and yet they still failed to supplement them accordingly.

## V. Motion to Reconsider

 The decision to grant a motion for reconsideration is within the scope of the Court's sound discretion. *Yuba Natural Resources, Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.1990). A motion for reconsideration shall be granted only if the movant demonstrates "(a) an intervening change in the controlling law has occurred, (b) evidence not previously available has become available, or (c) that the motion is necessary to prevent manifest injustice." *Citizens Fed. Bank, FSB v. United States,* 53 Fed.Cl. 793, 794 (2002). A motion for reconsideration "enables a trial court to address oversights." *Fru–Con Construction Corp. v. United States,* 44 Fed.Cl. 298, 315 (1999). However, a motion for reconsideration should not be used to merely reargue positions previously rejected. *See Stelco Holding v. United States,* 45 Fed.Cl. 541, 542 (2000).

 Plaintiff's argument (raised in its reply brief) that it was in compliance with the Claim Chart requirement of the SSPO was unconvincing when raised during oral argument, and remains so. As the Court stated in the September Bench Ruling, "If a one sentence reservation of universal right to assert the doctrine were sufficient, the requirement of presenting a claim chart would be essentially meaningless."

Because Defendants' discovery violations clearly hindered Plaintiff's ability to timely amend its Claim Chart, it would be manifestly unjust to preclude Plaintiff's arguments for failing to timely amend the Claim Chart.

To be sure, it would have been helpful for Plaintiff to have raised the issue immediately following the filing of the Renewed MSJ, but because Plaintiff suffered the prejudice required by RCFC 37(c) only upon being precluded from amending the Claim Chart at oral argument, raising the issue ahead of time would have been premature. Paragraph 11(c) of the SSPO, which governs amendments to the Claim Chart, states that amendments shall be allowed only "upon a showing of excusable subsequent discovery of new information or clearly excusable neglect." Plaintiff's failure to update the Claim Chart can be attributed to Defendants' failure to disclose non-infringement arguments 2, 3, and 4 prior to filing the Renewed MSJ.[10] This oversight on the part of Plaintiff is clearly excusable because it had no opportunity to request a timely amendment to the Claim Chart. It received notice of non-infringement contentions 2, 3, and 4 only after it was too late. Moreover, previously undisclosed non-infringement arguments 2, 3, and 4 clearly constitute newly discovered information, further lending credence to Plaintiff's request.

Therefore, the Court reconsiders the September Bench Ruling to the extent that it precluded Plaintiff from amending the Claim Chart to respond to non-infringement arguments 2, 3, and 4. However, because Plaintiff knew of Defendants' non-infringement contentions 1 and 5 prior to receiving the Renewed MSJ, the Court will not allow amendments to the Claim Chart pertaining to these claim limitations.

## VI. Conclusion

 As discussed above, Defendant violated RCFC 26(e)(2) when it filed the Renewed MSJ without having previously disclosed non-infringement arguments 2, 3, and 4. Plaintiff suffered prejudice stemming from Defendants' RCFC 26(e)(2) violation in the

---

**10.** Were this a case where Plaintiff was merely attempting to justify its failure to abide by the Claim Chart requirement by accusing Defendants' of a similar failure to follow the rules, the result would undoubtedly be different. Each party's duty to abide by the rules stands independent of the other. One party's failure to abide by the rules is not excused by similar behavior on the part of its opponent. The difference here, however, is that Defendants' failure to answer the contention interrogatories likely *caused* Plaintiff's failure to abide by the Claim Chart rule.

form of preclusion of its doctrine of equivalents arguments pertaining to these claim elements. Pursuant to RCFC 37(c), these non-infringement arguments would ordinarily be necessarily stricken from the Renewed MSJ.

However, because the Court is granting Plaintiff's request to amend the Claim Chart as to non-infringement arguments 2, 3, and 4, the prejudice suffered by Plaintiff stemming from Defendants' failure to properly supplement their discovery responses is no longer present. As a result, Defendants' failure to disclose non-infringement arguments 2, 3, and 4 was harmless, making the preclusion sanction of RCFC 37(c) unnecessary.

In view of the foregoing, it is hereby ordered that:

(1) Plaintiff's Motion to Preclude Defendants' Summary Judgment Arguments is hereby DENIED.

(2) Plaintiff's Motion for Reconsideration is hereby GRANTED–IN–PART and DENIED–IN–PART.

(3) Plaintiff's Motion for Oral Argument in connection with the instant motion is DENIED as moot in light of this opinion.

(4) Plaintiff is granted leave to amend the Claim Chart with respect to those claim elements brought into issue by non-infringement arguments 2, 3, and 4 of the Renewed MSJ.

(5) Defendant USPS shall, in accordance with RCFC 26 and any other applicable rules, supplement its responses to contention interrogatories 10 and 11 on or before **January 24, 2005**. The supplemental responses should also include information already made known to Plaintiff.

(6) Plaintiff shall update the Claim Chart on or before **January 31, 2005**, in accordance with any new non-infringement contentions set forth by the government that were not previously disclosed. The parties shall further fully supplement all other discovery responses and documents, including claim charts, response charts, etc., to bring them in compliance with both the SSPO and the applicable rules of the court.

(7) All parties shall meet and confer on or before **February 7, 2005**, to discuss any other outstanding discovery requests and attempt to resolve any remaining issues. Further, during a status conference held in this case on September 27, 2004, Plaintiff's sought leave to present a demonstrative exhibit during the September hearing. Defendants raised various objections. If Plaintiff still wishes to present the demonstrative exhibit to the Court, it shall make the demonstrative exhibit available to Defendants for inspection during the February 7, 2005 meeting.

(8) On or before **February 14, 2005**, Plaintiff shall file a brief explaining the purpose for offering the demonstrative exhibit and the reasons that it should be allowed into evidence (assuming, of course, that Plaintiff still wishes to do so). Defendants shall file their response to Plaintiff's brief explaining their objections on or before **February 21, 2005**.

(9) The parties shall file a Joint Status Report on or before **February 14, 2005**, detailing any remaining discovery issues between the parties in the case. The Joint Status Report shall include as attachments, copies of the supplemented Claim Chart and Response Chart (if the Response Chart has been supplemented pursuant to this order).

(10) A Joint Status Conference shall be held on **March 2, 2005**, at 10:00 AM Eastern Time. The purpose of the status conference will be to schedule oral argument for doctrine of equivalents issues and to hear argument on issue of the demonstrative exhibit if the Court finds it necessary. Parties shall appear in person at the Court of Federal Claims, and the status conference will held be on the record.

(11) Defendants' Renewed Motion for Summary Judgment of Non-infringement, filed April 2, 2004, is hereby stayed pending additional briefing and

argument pertaining to the doctrine of equivalents.[11]

---

**11.** This document was reissued for publication on February 7, 2005, pursuant to a joint report filed by the parties, dated January 26, 2005. The joint report stated that the opinion, originally filed under seal, could be published without alteration.