CITIZENS FEDERAL BANK,
FSB, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 92–656 C.

United States Court of Federal Claims.

May 10, 2002.

Charles J. Cooper, Washington, DC, for plaintiffs. Robert J. Cynkar, Vincent J. Colatriano and David H. Thompson, Washington, DC, of counsel.

Henry R. Felix, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were Jeanne E. Davidson, Deputy Director; David M. Cohen, Director; and Stuart E. Schiffer, Deputy Assistant Attorney General. Delisa M. Sanchez, of counsel.

## OPINION

DAMICH, Judge.

This case is before the Court on the Defendant's Petition for Reconsideration of the Court's liability decision with respect to the American transaction in the above-styled matter. *Citizens Federal Bank, FSB v. United States*, 51 Fed.Cl. 682 (2002). For the reasons discussed below, Defendant's Petition is DENIED.

## I. Standard of Review for a Motion to Reconsider

A party may file a motion to reconsider under RCFC 59(a). RCFC 59(a) provides that:

A new trial or rehearing or reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States. On a motion under this rule, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

The decision to grant a motion for reconsideration is found within the scope of its sound discretion. *Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed.Cir.1990). A motion for reconsideration will only be granted upon demonstration of a "manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." *Bishop v. United States*, 26 Cl.Ct. 281, 286 (1992) (*quoting Circle K Corp. v. United States*, 23 Cl.Ct. 659, 664 (1991)). *See also Franconia Assocs. v. United States*, 44 Fed.Cl. 315, 316 (1999). "The movant must show either that: (a) an intervening change in the controlling law has occurred, (b) evidence not previously available has become available, or (c) that the motion is necessary to prevent manifest injustice." *Bishop*, 26 Cl.Ct. at 286. A motion for reconsideration "enables a trial court to address oversights." *Fru–Con Construction Corp. v. United States*, 44 Fed.Cl. 298, 315 (1999). However, a court will not permit a party to use a motion for reconsideration for the purposes of rearguing positions that have already been rejected. *See Stelco Holding v. United States*, 45 Fed.Cl. 541, 542 (2000).

## II. Defendant's Petition for Reconsideration

As stated in this Court's previous opinion, "this Court will take up where [then-]Chief Judge Smith left off and, by looking at the arguments in response to the Show Cause order, determine the status of Defendant's arguments against liability." *Citizens Federal Bank*, 51 Fed.Cl. at 689. The Court is not inclined to reconsider this view. In *California Federal (Cal Fed I)*, Chief Judge Smith picked out common issues that applied to many *Winstar*-related cases, in an effort to expedite decision-making. *California Federal Bank, FSB v. United States*, 39 Fed.Cl. 753 (1997). His goal was that the parties would apply the decisions that he made on these issues to other *Winstar*-related cases or show how this could not be done. On appeal, this procedure received at least tacit approval by the Federal Circuit in *California Federal Bank, FSB v. United States*, 245

F.3d 1342 (Fed.Cir.2001)(*Cal Fed II*).[1] The Show Cause Order incorporated in the decision in *Cal Fed I* gave to the parties in other *Winstar*-related cases the opportunity to distinguish their cases from *Cal Fed I*. As reasonably read, the Order gave the parties the opportunity to make legal and factual arguments. In order that his decision in *Cal Fed I* would be given appropriate significance, Chief Judge Smith emphasized that the "government in responding to this order shall not raise issues that have been resolved by opinions in the original *Winstar* cases as clarified in this decision." *Cal Fed. I,* 39 Fed.Cl. at 779. Indeed, Chief Judge Smith warned the Government that it might be liable for attorneys fees if it did not comply. (Apparently, there had been a history of reluctance on the part of the Government to accept decisions adverse to it.[2])

The Defendant seems to be continuing the practice that Chief Judge Smith deplored. The history of the Defendant's view of the American transaction in this case may be characterized as shifting and vague-it is a moving target at which this Court and evidently the Plaintiffs have difficulty aiming.

In its first brief, Defendant admits liability: "With respect to the American acquisition, the Government does not dispute that contractual promises were made to Citizens concerning the accounting and regulatory capital treatment of supervisory goodwill, and that FIRREA was inconsistent with those promises." (Def.'s Mem. Supp. Summ. J. and Opp'n Pls.' Summ. J. at 2, n. 2).

Then comes the first back-pedal. In its Reply in Support of Defendant's Cross–Motion [for] Summary Judgment, Defendant finds three arguments (later augmented to four). It argues that: (1) the forbearance was for 5 years, not 25 years; (2) Citizens would have been in compliance with regulatory capital requirements even without forbearance; and (3) the Government did not make an unmistakable promise to bear the risk of regulatory change. (Def.'s Reply

Supp. Cross-mot. Summ. J. at 2, 6, 14 [hereinafter Def.'s June 27, 1997 Br.]).

After Chief Judge Smith's *Cal Fed I* decision, and in response to his Show Cause Order, Defendant stated:

> Assuming that the Court intended to issue a ruling that is applicable to all cases regardless of the factual circumstances, then, with respect to the American transaction, we have no choice but to respond by stating that we possess no contentions with respect to the issues whether: (1) a contract was created in this case and, (2) if so, whether the enactment of the [FIRREA] was inconsistent with that contract other than those contentions which were rejected by the Court in its December 22nd opinion.

(Resp. U.S.Ct.'s Order Show Cause at 2 [hereinafter Def.'s February 20, 1998 Br.]).

But, alas, it also stated in the same brief:

> In the American transaction, the forbearance letter at issue did authorize use of the purchase method of accounting and an amortization period of 25 years for supervisory goodwill. For the reasons set forth in our summary judgment briefs, we dispute that a contract was formed in that case as well.

(*Id.* at 16, n. 2).

Finally, Defendant stated that it understood *Cal Fed I* as saying that a contract regarding goodwill can be created by: (1) any document created by an acquirer submitted to the Federal Home Loan Bank Board (FHLBB) or a Principal Supervisory Agent, and (2) a second document generated by the Government that recognizes the use of the purchase method of accounting to record the transaction. Therefore, Defendant concluded:

> Given that documents of this type exist in this case with respect to the American transaction, we can offer no reason why, if our interpretation is correct, the Court should not hold that a contract regarding

---

1. The Government had brought up the procedure as an issue on appeal. The Federal Circuit explicitly mentioned it in its opinion and did not disapprove it.

2. In the conclusion section of the *Cal Fed I* opinion, Chief Judge Smith observed that "the government persists in ignoring or misrepresenting the law while failing to distinguish the cases factually." *Cal Fed. I,* 39 Fed.Cl. at 779.

the use of goodwill to satisfy the Government's minimum capital requirements was formed in that transaction.

(*Id.* at 22).

In general, Defendant's February 20, 1998 Brief is a complaint against the procedure adopted by the Court and an obfuscatory treatment of the *Cal Fed I* opinion. Defendant seemed to have no intention of treating Chief Judge Smith's *Cal Fed I* decision as having any real significance for *Citizens.*

And then, Defendant discovered a new argument in the American transaction. In its Response of the United States to Plaintiffs' Proposed Order, Defendant argued that the FHLBB was "unauthorized to enter into the alleged contract with [CSFC], a holding company involved with the acquisition of both Equitable and American." (Resp. to Pls.' Prop'd Order at 4). This argument, though, seems to have been abandoned—at least regarding the American transaction—as it did not appear on the list of "American" arguments in Defendant's Supplemental Brief to its Cross–Motion for Partial Summary Judgment as to Liability filed with this Court on March 28, 2001. The summary of Defendant's arguments provided in that brief is as follows:

(1) There was no promise concerning the counting of supervisory goodwill as part of regulatory capital for 25 years because the forbearance letter gave Citizens a five-year capital forbearance; (2) the application of the unmistakability doctrine—that the Government's contractual promises to limit the exercise of its regulatory authority will be found only if expressed in unmistakable terms-bars or limits plaintiffs' contract claim; (3) the "realities of the transaction" do not favor an interpretation of the contract that encompassed regulatory capital treatment because Citizens would not have been immediately capital non-compliant following the American acquisition; and (4) the Government did not agree to bear the risk of future regulatory changes [citing in a footnote a paragraph from the Regulato-

ry Maintenance Capital Agreement that Defendant admits that it had not cited in its original briefs].

(Def.'s Supp. Br. Summ. J. Liability at 5 [hereinafter Def.'s March 28, 2001 Br.]).

In the Court's previous opinion, the Court already explained in as much detail as corresponded to the detail of the arguments presented to it why the *California Federal* decisions rebutted Defendant's contentions. As Defendant continues to resist having to compare its case with the *California Federal* decisions in a thorough-going fashion, the Court will go through the Defendant's latest arguments seriatim, doing what Defendant should have done-determining with particularity how the *California Federal* opinions impact its arguments on liability.[3]

Argument (1) is disposed of against Defendant by Chief Judge Smith's decision in *Cal Fed I* and by the Federal Circuit's decision in *Cal Fed II*. The facts relevant to this argument are effectively identical to the Brentwood and Family transactions in those cases. California Federal received forbearance letters that provided for amortization of goodwill for a period of 35 years and for a period of 40 years, respectively. Those transactions also included agreements not to enforce FHLBB net worth requirements for a period of five years. *Cal Fed. II*, 245 F.3d at 1345. In this context, the Federal Circuit concluded:

We view the five-year expiration provision as relating only to the net worth forbearances that barred the FHLBB from enforcing its capital requirements for five years to the extent that any violation of those requirements was traceable to the subject acquisitions. The terms of the forbearance letters permitting the amortization over 35 to 40 years were separate and apart from the five-year enforcement-related terms. In any event, the five-year expiration provision of the net worth forbearances does not negate other obligations under the merger plan, including the specific time periods for amortization of good-

---

**3.** *See Citizens Federal Bank,* 51 Fed.Cl. at 689, n. 2: "This Court's statement that the *California Federal* decision was not binding on this Court, made during a status conference on March 2,

2001, was, of course, a statement of general principle and not a ruling from the bench. *See* Def.'s March 28, 2001 Br. at App. 31."

will. [*Winstar Corp. v. U.S. (Winstar II)*, 64 F.3d 1531, 1542 (1995).]

*Id.* at 1348.

■ Argument (2) on unmistakability is also disposed of against the Defendant by Chief Judge Smith's decision in *Cal Fed I* and by the Federal Circuit's decision in *Cal Fed II*. The facts relevant to the unmistakability argument are effectively identical to the Brentwood and Family transactions in those cases, just as they are to Argument (1). This Court has just held that, as in *Cal Fed II,* the terms of the forbearance letter in the American transaction permitting amortization of supervisory goodwill over 25 years "were separate and apart from the five-year enforcement-related term." The Federal Circuit noted that the Court of Federal Claims found that "two of the three *Winstar* test cases involved forbearance letters ... that contained net worth forbearances similar, if not identical, to those now at issue [the Brentwood and Family transactions]." *Id.* Therefore, it follows that if the forbearance letter in the American transaction is the essence of the contract, and if its terms are effectively identical to the forbearance letters in the Brentwood and Family transactions, and if the Brentwood and Family forbearance letters are similar to, if not identical to, the forbearance letters in two of the three *Winstar* test cases, and if in those cases the unmistakability doctrine did not preclude a finding of breach of contract, then it does not in this case either.

■ Argument (3) is based on a misreading of *Winstar.* The "realities of the transaction" argument plays an auxiliary role; it is not a *sine qua non.* That is, the fact that an acquiring thrift would not become immediately insolvent but for the counting of supervisory goodwill as regulatory capital works to add strength to a weak argument based on the documents involved. This is clear from the introductory sentence of the paragraph of the Supreme Court's *Winstar* opinion from which the Defendant quotes on page 6 of its June 27, 1997 brief: *"To the extent that the integration clause leaves any ambiguity,* the other courts that construed the documents found that the realities of the transaction favored reading those documents

as contractual commitments, not mere statements of policy." *U.S. v. Winstar,* 518 U.S. 839, 863, 116 S.Ct. 2432, 2449, 135 L.Ed.2d 964 (emphasis added). In this case, interpreting the American transaction in light of *Cal Fed II's* Brentwood and Family transactions, there is no ambiguity to be cleared up—the documentary evidence is sufficient. Furthermore, as Senior Judge Bruggink reasoned in *Home Savings of America v. U.S.:* "If defendant's reading [of *Winstar*] were correct, courts would be put in the position of determining whether a deal was good or bad in order to determine what the terms of the deal were." *Home Savings of America v. United States,* 50 Fed.Cl. 427, 434 (2001). Therefore, Argument (3) is not persuasive.

■ Defendant's Argument (4) that "the Government did not agree to bear the risk of future regulatory changes" is deployed in very general terms. In Defendant's Supplemental Brief, it is supported by a quotation in a footnote that was not expressly cited in its original summary judgment briefs, as Defendant admits (Def.'s March 28, 2001 Br. at 5–6, n. 1). The same footnote characterizes this quotation as " 'successor regulation' language" (*Id.* at 5, n. 1). Defendant previously raised Argument (4) as Part IV (labeled *"The Government Did Not Agree To Bear The Risk Of Future Regulatory Changes"*) of its June 27, 1997 Br. at 13. The gist of the argument in Part IV, however, is that the unmistakability doctrine does not permit a court to *infer* that:

> the United States would permanently assume the risk of regulatory change by silently agreeing to allow Citizens to use the purchase method of accounting, or to credit supervisory goodwill as part of regulatory capital for up to 25 years, *regardless* of other contract terms expressly governing such subjects, or regardless of future regulatory changes to the allowability of such accounting methods, is clearly contrary to law.

(*Id.* at 15) (emphasis in original).

The point seems to be simply that a court is not permitted to "infer." It is not an argument that successor regulation language does not *support* an inference that the gov-

ernment agreed to bear the risk of future regulatory changes. Insofar as Part IV is simply the unmistakability argument, it has been addressed in this opinion in the discussion of Argument (2).

The citation to successor regulation language, then, is indeed a new argument that the court, in looking at the documents of the transaction, should take the successor regulation language into account in arriving at a conclusion (inferring) in this case about which party bore the risk of future regulatory changes. But Defendant does not elaborate at all on how the successor regulation language in this case places the burden on Plaintiffs nor on how it differs from such language in *Cal Fed I*. In *Cal Fed I*, Chief Judge Smith identified Issue 12 as: " 'Successor regulation' language in an assistance agreement, net worth maintenance agreement, or in other agreements *per se* placed the risk of change in the law on the acquiring thrift." *Cal Fed. I*, 39 Fed.Cl. at 777. His decision was: "The court is required to follow the Supreme Court and reject Defendant's argument that 'successor regulation' language shifted the risk from the government to [Benj. Franklin Savings and Loan Association]." *Id.* at 779. It appears that Defendant is asserting the same argument as Issue 12. In the absence of any detailed argument as to how the successor regulation language in this case differs from *Cal Fed I*, Argument (4) is not persuasive.

### III. Conclusion

For the reasons stated above, Defendant's Petition for Reconsideration is DENIED.