ENGLEWOOD TERRACE LIMITED
PARTNERSHIP, a Michigan Lim-
ited Partnership, Plaintiff,

v.

UNITED STATES, Defendant.

No. 03–2209C.

United States Court of Federal Claims.

April 7, 2009.

Don S. Samuelson, Law Offices of Don S. Samuelson, Lake Forest, Illinois.

Douglas K. Mickle, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Michael F. Hertz, Deputy Assistant Attorney General, Jeanne E. Davidson, Director and Brian M. Simkin, Assistant Di-

rector, Commercial Litigation Branch. Of counsel, Gregory G. Gustin, Maria T. Baguio, Lorraine C. Shoto, and Jaret R. Fishman, Office of General Counsel, United States Department of Housing and Urban Development, Chicago, Illinois.

## ORDER

HORN, Judge.

### FINDINGS OF FACT

Plaintiff filed a motion to reconsider a decision issued by this court which denied plaintiff a rent increase and denied reimbursement for higher energy costs at a Housing and Urban Development (HUD)-subsidized housing facility. *See Englewood Terrace Ltd. P'ship v. United States*, 84 Fed.Cl. 649 (2008) (*Englewood III*).[1] Plaintiff moves to reconsider only the denial of a rent increase, not the denial of a one-time reimbursement of higher energy costs. The court also issued an earlier opinion which concluded the liability issue of a breach of contract claim in favor of the plaintiff. *See Englewood Terrace Ltd. P'ship v. United States*, 79 Fed.Cl. 516 (2007) (*Englewood II*). The extensive findings of fact in the last two decisions issued by the undersigned will not be repeated here, but are incorporated into this order. For convenient reference, the key facts relevant to this opinion are referenced briefly here. Plaintiff Englewood alleged that HUD breached a Housing Assistance Payment (HAP) contract between Englewood and HUD. The HAP contract provided for rent subsidies to be used by the tenants of South Pointe Towers (South Pointe), an apartment building in Chicago, Illinois. South Pointe was owned by the Englewood Terrace Limited Partnership. John J. Hayes was the President of P.M. Group, the Englewood Terrace Limited Partnership's general partner, until December 13, 2002. An entity owned by Mr. Hayes, P.M. One, was the managing agent at South Pointe. On December 13, 2002,

DSSA New Englewood Terrace LLC (DSSA), a sole proprietorship of Don S. Samuelson, replaced P.M. Group as Englewood's general partner. Earlier, on December 1, 2001, Mr. Samuelson's DSSA Management, Inc., which was affiliated with Mr. Samuelson's DSSA New Englewood Terrace LLC, replaced P.M. One as South Pointe's managing agent.

Englewood's complaint stemmed from HUD's termination of Englewood's HAP contract with HUD. The HAP contract at South Pointe ended on September 30, 2002, after tenants had been given housing vouchers permitting them to either remain at South Pointe or relocate to other housing facilities. HUD based its termination of the HAP contract on its belief that the tenants were not being provided decent, safe and sanitary housing, as required by the HAP contract.

The specific basis for the termination of the HAP contract was a March 2, 2001 HUD inspection of South Pointe. After a trial in the matter, this court found that HUD's decision to terminate Englewood appeared to have been made even before HUD received Englewood's plan to correct deficiencies identified in the March 2, 2001, HUD inspection. The court concluded that Englewood was not afforded a full and meaningful opportunity to cure the deficiencies identified in the March 2, 2001, HUD inspection. The record reflects that, on the one hand, HUD had urged that South Pointe be placed under new management and new ownership, but that, once new management and ownership were in place, there appeared to be a reluctance on the part of HUD to provide a meaningful opportunity for the new management and ownership, in the person of Mr. Samuelson, to take corrective action, or for HUD to even acknowledge any improvement at South Pointe. HUD's actions and posture thereby undermined its contract termination action against Englewood.

---

1. *Englewood I* was an opinion issued by Judge Victor J. Wolski, the original judge assigned to the case, *see Englewood Terrace Limited Partnership v. United States*, 61 Fed.Cl. 583 (2004). The case was subsequently re-assigned to the undersigned judge, who issued *Englewood II, Engle-*
*wood Terrace Limited Partnership v. United States*, 79 Fed.Cl. 516 (2007), and *Englewood III, Englewood Terrace Limited Partnership v. United States*, 84 Fed.Cl. 649 (2008). This order on the plaintiff's motion for reconsideration becomes *Englewood IV*.

After the trial on liability, the court afforded the parties an opportunity to settle any remaining issues, including damages. In addition to the contract termination issue, Englewood also made a claim for a rent increase at South Pointe. On the rent increase claim, Mr. Samuelson had sent an August 21, 2001 letter to Edward J. Hinsberger, the Director of HUD's Chicago Multifamily Hub, titled, "Contract Renewal and Budget Based Rent Increase for South Pointe Apartments," on DSSA Management, Inc. letterhead, indicating that DSSA, Inc., intended to obtain a partnership interest in Englewood, and that DSSA Management, Inc. intended to become the managing agent for South Pointe. Mr. Samuelson's letter also stated that South Pointe had not had a rent increase since 1998, and requested an increase, with "rent levels increased to market comparables." Mr. Samuelson's justification for the rent increase stated:

First, South Pointe is operating in 2001 on a 1998 income schedule. There have been three years without a rental increase. Second, Operations have resulted in deficits of approximately $200K a year in 1999 and 2000. Gas costs have risen dramatically over the past year. While vacancy and collection losses, and legal and security costs can be reduced in the future after the improvement program has been put in place, they will not be able to be reduced meaningfully during the remainder of 2001 and 2002. Third, rent comparables in the neighborhood support an average rental increase of $56 per unit per month. Such an increase would increase income potential by $200K per year, enough to offset the operating deficits that have been experienced in past years.

Mr. Samuelson included a Rent Comparability Study with his request for a rent increase. A September 5, 2001 internal HUD e-mail reflected that a desk review of this Rent Comparability Study for South Pointe was conducted, and that the Study was found to be acceptable. As a result, in a September 6, 2001 e-mail to Mr. Samuelson, titled "South Pointe Comparability Study," Mr. Hinsberger wrote that the requested rent increase was supported by the rent comparability survey, but that the request needed to be signed by the owner, Mr. Hayes, and resubmitted. Mr. Hayes' recollection was that he signed a request for the rent increase, however, Mr. Hinsberger stated that HUD never received a rental request signed by Mr. Hayes. Neither party produced a document signed by owner Hayes requesting a rent increase for the court's review. The court concluded that plaintiff had not demonstrated by a preponderance of the evidence that a request for a rent increase was submitted by Mr. Hayes. *See Englewood Terrace Ltd. P'ship v. United States*, 84 Fed.Cl. at 653 (*Englewood III*). The court further concluded that the request for a rent increase signed by Mr. Samuelson was submitted to HUD at a time when Mr. Samuelson was neither the owner nor the manager of South Pointe Towers. *Id.* No copy of the rent increase request submitted to the court contained a certification signed by Mr. Samuelson, or Mr. Hayes, or anyone else, as to the accuracy of the supporting data. *Id.* at 653–54. The claim for a rent increase was denied in the court's earlier opinion. *Id.* at 654.

Plaintiffs present motion for reconsideration does not address the denial of reimbursement of higher energy costs in *Englewood III*, or the request for a budget-based rent increase signed by Mr. Samuelson, which was dealt with at length in *Englewood III*. Instead, plaintiff, for the first time, argues an "alternative route," that is, for a rent increase based on an "operating cost adjustment factor (OCAF)."

## DISCUSSION

Rule 59(a)(1) of the Rules of the United States Court of Federal Claims (RCFC) provides that the court may, on motion of either party, reconsider any or all issues previously decided. Furthermore, RCFC 54 provides that, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." RCFC 54(b). In this last regard, damages to which Englewood may be entitled remain unsettled

and are pending, so judgment has not been entered in this case.

■■■■ The United States Court of Appeals for the Federal Circuit has stated that: "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.), *reh'g denied* 904 F.2d 1577 (Fed.Cir.1990); *see also Alpha I, L.P. v. United States,* No. 06–407T, et al., 2009 WL 565214, at*2 (Fed. Cl. Mar. 3, 2009); *Banks v. United States,* 84 Fed.Cl. 288, 291–92 (2008); *Corrigan v. United States,* 70 Fed. Cl. 665, 667–68 (2006), *aff'd,* 223 Fed.Appx. 968 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.), *cert. denied,* —— U.S. ——, 128 S.Ct. 338, 169 L.Ed.2d 155 (2007); *Tritek Techs., Inc. v. United States,* 63 Fed.Cl. 740, 752 (2005); *Keeton Corrections, Inc. v. United States,* 60 Fed.Cl. 251, 253 (2004); *Paalan v. United States,* 58 Fed.Cl. 99, 105 (2003), *aff'd,* 120 Fed.Appx. 817 (Fed.Cir.), *cert. denied,* 546 U.S. 844, 126 S.Ct. 91, 163 L.Ed.2d 108 (2005); *Citizens Fed. Bank, FSB v. United States,* 53 Fed.Cl. 793, 794 (2002). Courts must address reconsideration motions with "exceptional care." *Carter v. United States,* 207 Ct.Cl. 316, 318, 518 F.2d 1199, 1199 (1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86, *reh'g denied,* 424 U.S. 950, 96 S.Ct. 1423, 47 L.Ed.2d 356 (1976); *see also Henderson County Drainage Dist. No. 3 v. United States,* 55 Fed.Cl. 334, 337 (2003) (citing *Fru–Con Constr. Corp. v. United States,* 44 Fed.Cl. 298, 300 (1999)); *Seldovia Native Ass'n Inc. v. United States,* 36 Fed. Cl. 593, 594 (1996), *aff'd,* 144 F.3d 769 (Fed. Cir.1998). To prevail, a motion for reconsideration "must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." *Circle K Corp. v. United States,* 23 Cl.Ct. 659, 664–65 (1991), *vacated to facilitate settlement,* No. 12–86T, 1996 WL 904545 (Fed.Cl. Nov. 15, 1996); *see also Matthews v. United States,* 73 Fed.Cl. 524, 526 (2006); *Ammex, Inc. v. United States,* 52 Fed.Cl. 555, 557 (2002), *aff'd,* 384 F.3d 1368 (2004), *cert. denied,* 544 U.S. 948, 125 S.Ct. 1697, 161 L.Ed.2d 525 (2005); *Stelco Holding Co. v. United States,* 42 Fed.Cl. 156, 157 (1998); *Principal Mut. Life Ins. Co.*

*v. United States,* 29 Fed.Cl. 157, 164 (1993), *aff'd,* 50 F.3d 1021 (Fed.Cir.), *reh'g denied and en banc suggestion declined* 50 F.3d 1021 (Fed.Cir.1995). "A court, therefore, will *not* grant a motion for reconsideration if the movant 'merely reasserts ... arguments previously made ... all of which were carefully considered by the court.'" *Ammex, Inc. v. United States,* 52 Fed.Cl. at 557 (quoting *Principal Mut. Life Ins. Co. v. United States,* 29 Fed.Cl. at 164) (emphasis in original); *see also Tritek Techs., Inc. v. United States,* 63 Fed.Cl. at 752. Nor will a party prevail on a motion for reconsideration "by raising an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed." *Matthews v. United States,* 73 Fed.Cl. at 526; *see also Bluebonnet Sav. Bank v. United States,* 466 F.3d 1349, 1361 (Fed.Cir.2006) ("Although the government makes an elaborate argument in its brief ... the government never made that argument to the trial court until its motion for reconsideration following the trial court's issuance of its decision. As the trial court noted in denying the motion, an argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived and not preserved for appeal.") (citing *Lamle v. Mattel, Inc.,* 394 F.3d 1355, 1359 n. 1 (Fed.Cir. 2005) and *Caldwell v. United States,* 391 F.3d 1226, 1235 (Fed.Cir.2004)) (other citations omitted); *Yuba Natural Res., Inc. v. United States,* 904 F.2d at 1582–83; *Gelco Builders & Burjay Constr. Corp. v. United States,* 177 Ct.Cl. 1025, 1036–37 n. 7, 177 Ct.Cl. 1025, 369 F.2d 992, 1000 n. 7 (1966); *S. Nuclear Operating Co. v. United States,* 79 Fed.Cl. 135, 137 (2007); *Stockton E. Water Dist. v. United States,* 76 Fed.Cl. 497, 500 (2007). "Motions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" *Caldwell v. United States,* 391 F.3d at 1235 (quoting *Fru–Con Constr. Corp. v. United States,* 44 Fed.Cl. at 300). "To prevail on a motion for reconsideration, the movant must point to a manifest error of law or mistake of fact. Specifically, the moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously

unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." *Matthews v. United States,* 73 Fed. Cl. at 526 (citations omitted); *see also Tritek Techs., Inc. v. United States,* 63 Fed.Cl. at 752; *Bannum, Inc. v. United States,* 59 Fed. Cl. 241, 243 (2003); *Citizens Fed. Bank, FSB v. United States,* 53 Fed.Cl. at 794; *Strickland v. United States,* 36 Fed.Cl. 651, 657, *recons. denied* (1996); *Bishop v. United States,* 26 Cl.Ct. 281, 286 (1992), *recons. denied* (1992). "Manifest," as in "manifest injustice," is defined as "clearly apparent or obvious." *Ammex, Inc. v. United States,* 52 Fed.Cl. at 557. "Where reconsideration is sought due to manifest injustice, the moving party can only prevail if it demonstrates that the injustice from the case is 'apparent to the point of being indisputable.'" *Shirlington Limousine & Transp., Inc. v. United States,* 78 Fed.Cl. 27, 31 (2007) (quoting *Pac. Gas & Elec. Co. v. United States,* 74 Fed.Cl. 779, 785 (2006)).

*Operating Cost Adjustment Factor (OCAF)*

Plaintiff notes that the rent increase request signed by Mr. Samuelson, and denied by HUD and this court, was for a "budget-based rent increase." In the current motion, plaintiff states:

> HUD had two ways it could have satisfied its statutory obligation to provide an annual rent increase to Englewood. The first was to grant a request by Englewood for a budget-based rent increase and implement the increase at the time of the execution of the 2001 HAP contract. The second was for HUD to make an annual OCAF [Operating Cost Adjustment Factor] adjustment by applying the annual Illinois OCAF percentage to the difference between the contract rents and the annual debt service, a proxy for operating expenses.

> \* \* \*

> There was no discussion of HUD's obligation to implement the alternative route to the annual rent increase under the annual OCAF adjustment. As a result, neither the parties nor the Court considered the rent increases that Englewood should have received under the annual Illinois

OCAF adjustments for the 2000 HAP contract and its three automatic one-year renewals through September, 2004.

In making its decision to deny Englewood's request for a budget-based rent increase in 2001, the Court did not consider HUD's obligation under Section 524(c) of MAHRA [Multifamily Assisted Housing Reform and Affordability Act] to provide *some* annual rent adjustment based on either: (1) a budget-based request (which required an owner submission); or (2) the annual application of a state-based Operating Cost Adjustment Factor ("OCAF") (which required no owner action).

The 2000 HAP contract was executed by the parties in October 2000, and was to cover a base period of October 1, 2000 through September 30, 2001, with three additional, automatic, one-year terms. The 2000 HAP contract provided that, "[a]fter rent levels have initially been established under section 524(a) of MAHRA, all subsequent adjustments to Contract Rents shall be determined in accordance with section 524(c) of MAHRA." Plaintiff acknowledges that a budget-based rent increase under MAHRA was "conditional," but argues that, if a budget-based rent increase did not occur, then an operating cost adjustment factor (OCAF) rent increase was a "HUD obligation."

Section 524 of the Multifamily Assisted Housing Reform and Affordability Act (MAHRA) of 1997 (42 U.S.C. § 1437f note), was amended to read as follows:

> (c) Rent Adjustments After Renewal of Contract.—

> (1) Required—After the initial renewal of a contract for assistance under section 8 of the United States Housing Act of 1937 pursuant to subsection (a), (b)(1), or (e)(2), the Secretary shall annually adjust the rents using an operating cost adjustment factor established by the Secretary (which shall not result in a negative adjustment) or, upon the request of the owner and subject to approval of the Secretary, on a budget basis.

Pub.L. 106–74, Title V, Subtitle C, § 531, 113 Stat. 1109, 1113 (1999).

Since a budget-based rent increase was requested, but not awarded, plaintiff argues that an OCAF rent adjustment should have occurred automatically, even without a request for an OCAF rent adjustment. According to plaintiff, the OCAF computation itself involves taking debt service payments (principal and interest), subtracting that amount from the total of contract rents, to produce an "OCAF base amount," then applying an "OCAF adjustment" percentage to the base amount, to derive the amount of the OCAF rent increase for the year. This formula, according to plaintiff, would yield a rent increase of $49,345.00 for the 2000 HAP contract times four; $95,215.00 for 2001 times three; $63,557.00 for 2002 times two; and $2,015.00 for 2003, for a total OCAF rent increase of $612,134.00.[2] Plaintiff states that its OCAF rent increase argument is not merely a "reassertion of arguments previously made and carefully considered by the court," and is not merely "an attempt to relitigate issues already decided by the Court." Both defendant and the court can concur that an OCAF rent increase was not previously argued before or decided by the court. Defendant contends that an OCAF rent increase has been waived by plaintiff. The court agrees.

What has been presented to and decided by the agency and this court is the viability of a budget-based rent increase for South Pointe. Mr. Samuelson's very letter to HUD requesting a rent increase was titled: "Contract Renewal and Budget Based Rent Increase for South Pointe Apartments." Mr. Samuelson's August 21, 2001 letter noted that there had not been a rent increase at South Pointe since 1998, although South Pointe had been operating at a deficit, and explicitly requested a "budget based rent increase" in the third paragraph of the letter. The acronym "OCAF" and the words "operating cost adjustment factor" are not found in Mr. Samuelson's letter, and no OCAF rent increase was requested for the next HAP contract period, beginning October 1, 2001, nor for the prior years during which, accord-

ing to Mr. Samuelson, no rent increases were received. In spite of the apparent absence of rent increases for the prior three years, there was no mention by Mr. Samuelson of an automatic OCAF rent increase. Mr. Samuelson's August 21, 2001 letter states that: "The current Section 8 contract expires September 30, 2001. Renewal is sought under Option 2 of the Section 8 Renewal Guide, since this is a renewal with below market rents. A budget based rent increase is also requested with rent levels increased to market comparables." Mr. Samuelson explicitly indicated that a budget-based rent increase was requested, with no mention of an OCAF adjustment, and included a "Budget Worksheet, Income and Expense Projections," which was required for a budget-based rent increase request, but not for an OCAF rent increase. The Section 8 Renewal Guide cited in Mr. Samuelson's August 21, 2001 letter is formally titled "Section 8 Renewal Policy: Guidance for the Renewal of Project–Based Section 8 Contracts," signed by William C. Apgar, Assistant Secretary for Housing–Federal Housing Commissioner, and dated January 19, 2001. The Section 8 Renewal Guide, with which Mr. Samuelson was complying on his budget-based rent increase request, states that both budget-based rent increase requests and OCAF rent increase requests require submissions by the "Owner," the latter via an "OCAF Worksheet." HUD's Section 8 Renewal Guide states that:

A. For rent adjustments for existing multi-year contracts, at least 120 days before the anniversary date of the contract, the Owner submits:

1. **OCAF Worksheet.** Attachment 3; or

2. **Budget.** If applicable, a budget based rent increase request in accordance with the requirements of HUD Handbook 4350.1, Chapter 7, and Attachment 5 of this Guide.

William C. Apgar, Assistant Secretary for Housing–Federal Housing Commissioner, *Section 8 Renewal Policy: Guidance for the*

---

**2.** These are cumulative figures, e.g., the $49,345.00 for 2000 would also add that same amount for 2001, 2002, and 2003. Using the plaintiff's own annual HAP contract figures, for 2000–2003, the court computes a total of $612,154.00 in rent increases for the four-year period, rather than the plaintiff-calculated $612,134.00.

*Renewal of Project–Based Section 8 Contracts,* ch. 4, sec. 4–3A, at 2 (Jan. 19, 2001) (emphasis in original).

A May 31, 2002 follow-up letter to HUD from DSSA Management, Inc., Mr. Samuelson's management company, which was attached to the complaint, reiterated the budget-based rent increase claim of Mr. Samuelson's August 21, 2001 letter, again without mention of an OCAF claim. Continuing this theme, the plaintiffs complaint filed in this court mentions only a "budget-based rental increase," at paragraph 50 of the complaint, and at Count II, paragraph 94(b), brings a "Breach of Contract for Failure to Make Payments" claim, including failure "to implement the rental increase that it [HUD] acknowledged was proper in August 2001," an apparent reference to Mr. Samuelson's budget-based rent increase request of August 21, 2001. An OCAF rent increase claim is not contained in the plaintiff's complaint.

Moreover, an Amended Joint Statement of Issues of Fact and Law, filed by the parties with the court after trial to clarify post-trial briefing, refers only to the budget-based rent increase claim, and not to an OCAF-based rent increase. In post-trial briefing focusing on the rent increase claim, defendant noted that "Englewood did not seek a [sic] operating cost factor increase ('OCAF'). Instead, Englewood sought a budget-based increase." (citing Mr. Samuelson's August 21, 2001, request for a budget-based rent increase). In its reply brief, plaintiff did not dispute the defendant's characterization of its claim, and listed as the rent increase issue, "whether HUD was obligated to review and process the request for a rental increase submitted by Englewood," referring to the budget-based rent increase submitted by Mr. Samuelson, and answering that issue in the affirmative—"HUD was required to process Englewood's rent request, and may be held liable for its failure to do so." The court concludes that plaintiff's OCAF rent increase claim was first raised by plaintiff in its motion for reconsideration.

Plaintiff states, correctly, that the court did not consider an OCAF rent increase. Plaintiff submitted: "[t]here was no discussion of HUD's obligation to implement the alternative route to the annual rent increase under the annual OCAF adjustment. As a result, neither the parties nor the Court considered the rent increases that Englewood should have received under the annual Illinois OCAF adjustments for the 2000 HAP contract and its three automatic one-year renewals through September, 2004." This state of affairs resulted from plaintiff's pleadings, trial presentation, and argument for a budget-based rent increase exclusively. In this court, plaintiff did not claim an OCAF rent increase, not even in the alternative. Rather than seeking a reconsideration of the court's opinion on an OCAF claim, plaintiff effectively is tendering a new claim at this late stage, post-trial, when all the evidence has been received and damages are in settlement negotiations. The court addressed, and denied, the only rent increase claim placed before it, the budget-based rent increase claim. Plaintiff does not challenge the court's reasoning on the denial of its budget-based rent increase claim, but brings to the court a new claim, based on a new theory. Since plaintiff never advanced the theory of an OCAF-based rent increase claim, the court never considered or ruled on that theory, and there is nothing for the court to now "reconsider."

Defendant notes that HUD's Section 8 Renewal Guide, which plaintiff cited in its August 21, 2001 letter, and which plaintiff attempted to comply with on its budget-based rent increase request, "required owner action to obtain a rent increase, regardless of whether it was OCAF or budget-based, at least 120 days prior to the anniversary date of the HAP Contract. The owner had to prepare and submit certified documentation to HUD in order to both renew its HAP Contract or obtain a rent increase." Similarly, judicial redress of an OCAF claim is not self-executing, but requires presentation to the agency, pleading, evidence and argument, none of which occurred prior to the plaintiff belatedly raising the issue in its recent motion for reconsideration. Plaintiff attempts to cure these omissions by asking the court to direct the parties, now, "to meet, confer, review Englewood's OCAF calculations and develop joint stipulations as to the annual

rent adjustments Englewood should have received under the Section 524(c) annual OCAF alternative provided for under the 2000 HAP contract." In this regard, plaintiff's proposed calculations involve the annual totals of contract rents, the annual totals of debt service (principal and interest), computation of an OCAF base amount, and application of an OCAF adjustment percentage to the OCAF base amount.

*Waiver*

█ Defendant argues that plaintiff's failure to raise the OCAF rent increase claim constitutes a waiver of the claim. The court agrees. The OCAF rent increase was not part of the plaintiff's complaint, or part of the trial, and was first raised in plaintiff's motion for reconsideration. The court concludes plaintiff has thereby waived its OCAF rent increase claim. *See Whittaker Elec. Sys. v. Dalton,* 124 F.3d 1443, 1446 (Fed.Cir.1997) ("The doctrine of waiver precludes a contractor from challenging the validity of a contract, whether under a DAR [Defense Acquisition Regulation] or on any other basis, where it fails to raise the problem prior to execution, or even prior to litigation, on which it later bases its challenge." (citing *United Int'l Investigative Servs. v. United States,* 109 F.3d 734, 738 (Fed.Cir.1997) and *E. Walters & Co. v. United States,* 217 Ct.Cl. 254, 576 F.2d 362, 367–68 (1978)), *reh'g denied and en banc suggestion declined* (Fed. Cir.1997); *see also Am. Tel. & Tel. Co. v. United States,* 307 F.3d 1374, 1380–81 (Fed. Cir.2002) (finding that AT & T waived its claim for reformation, and citing *Whittaker Electronic Systems* ), *reh'g en banc denied* (Fed.Cir.), *cert. denied,* 540 U.S. 937, 124 S.Ct. 56, 157 L.Ed.2d 249 (2003); *Casa de Cambio Comdiv S.A. de C.V. v. United States,* 291 F.3d 1356, 1366 (Fed.Cir.2002) ("In any event, we conclude that we need not address Casa's agency theory because it was not properly raised. No mention of this theory appears in Casa's *complaint.* Under the circumstances, we hold that Casa waived any claim it may have against the government based on such a theory.") (emphasis added), *reh'g and reh'g en banc denied* (Fed. Cir.2002), *cert. denied,* 538 U.S. 921, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003); *Baird v. United States,* No. 04–1454C, 2007 WL 5161609, at * 1 (Fed.Cl. July 19, 2007) ("It is undisputed that Plaintiff did not include any allegations in his September 14, 2004 *complaint* regarding an FCRA [Fair Credit Reporting Act] claim. For this reason alone, the FCRA claim must be rejected.") (emphasis added)), *aff'd,* 285 Fed.Appx. 746 (Fed. Cir.), *reh'g denied* (Fed.Cir.2008). In *Corrigan v. United States,* 70 Fed.Cl. at 668, the court stated: "In addition, by failing to raise an issue when it is first available to be litigated, a party waives consideration by the court of the issue on reconsideration, even when the party is pro se." (citing *Lamle v. Mattel, Inc.,* 394 F.3d at 1359 n. 1); *see also Matthews v. United States,* 73 Fed.Cl. at 526 (A party will not prevail on a motion for reconsideration "by raising an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed."); *Seldovia Native Ass'n, Inc. v. United States,* 36 Fed.Cl. at 594 ("[A] motion for reconsideration ... should not be based on evidence that was readily available at the time the motion was heard."); *Bishop v. United States,* 26 Cl.Ct. at 286 (a motion for reconsideration "is not intended to give an unhappy litigant an additional chance to sway the court").

In a similar vein, and citing to *Corrigan* and other cases, the court in *Renda Marine* held:

> Moreover, RCFC 59 is not intended to allow a movant to raise additional theories that it failed to advance in connection with the underlying decision that it moves the court to reconsider. *Corrigan v. United States,* 70 Fed.Cl. 665, 669 (2006); *see Fru–Con,* 44 Fed.Cl. at 301 ("Because '[t]he litigation process rests on the assumption that both parties present their case once, to their best advantage,' a strong public policy precludes a reconsideration motion based on evidence that was readily available at the time the original motion was heard." (quoting *Aerolease Long Beach v. United States,* 31 Fed.Cl. 342, 376 (1994))). " 'Litigants should not, on a motion for reconsideration, be permitted to attempt an extensive retrial based on evidence which was manifestly available at [the] time of the hearing.' " *Hill v. Unit-*

ed States, 69 Fed.Cl. 467, 468 (2006) (quoting Bishop, 26 Cl.Ct. at 286); see also Frietsch v. Refco, Inc., 56 F.3d 825, 828 (7th Cir.1995) ("It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him.").

Renda Marine, Inc. v. United States, 71 Fed.Cl. 782, 786–87 (2006), affd, 509 F.3d 1372 (Fed.Cir.2007), reh'g and reh'g en banc denied (Fed.Cir.2008).

Plaintiff denies that it intended to waive its OCAF rent increase claim, and argues that "[w]aivers of rights must be voluntary, knowing and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences," quoting Krzeminski v. United States, 13 Cl.Ct. 430, 438 (1987). Plaintiff argues that John Hayes complained about the termination of the HAP contract, and filed suit for injunctive relief in the United States District Court in the Northern District of Illinois, Eastern Division, seeking to stop the issuance of vouchers that permitted tenants to find other housing and to stop the impending termination of the HAP contract. However, the record reflects that Mr. Hayes' discussions with HUD, and, for that matter, Mr. Samuelson's discussions with HUD, as well as Englewood's United States District Court action, do not mention the OCAF rent increase claim which plaintiff now argues, for the first time, in its motion for reconsideration.

The Krzeminski case, cited by plaintiff by way of support, was a military pay case in which a waiver of a right to an administrative discharge board was found not to be voluntary, knowing and intelligent. Id. at 438–39. The claimant in Krzeminski had stated that he did not want to sign the waiver form because he had just been released from the hospital, after psychiatric evaluation, and was "unable to concentrate," but was nevertheless told by an attorney to sign the waiver, with the instructions from counsel based on erroneous advice. Id. Similar psychiatric and inability to concentrate issues are not before the court in the present case. The plaintiff also cited as support the United States Supreme Court case of Johnson v.

Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), a criminal case, in which the defendant was found not to have waived his Sixth Amendment right to counsel. The defendant in Johnson was arrested for counterfeiting, jailed without bail, then arraigned, tried, convicted and sentenced, all on the same day and without benefit of counsel. Id. at 459–60, 58 S.Ct. 1019. A request for counsel had been made to the District Attorney, to no avail. Id. at 460, 58 S.Ct. 1019. After conviction, defendant asked, but was not permitted to contact an attorney, and was placed in isolation for sixteen days with no outside communication. Id. at 461–62, 58 S.Ct. 1019. Such Sixth Amendment issues relating to the right to counsel and deprivation of liberty are similarly not before the court in the present case. Plaintiff also cites the Roxco case in support, in which the government argued a contractor had waived its various claims by abandoning the contract. Roxco, Ltd. v. United States, 60 Fed.Cl. 39, 41–44 (2004). The court found, however, that because "[t]he same issues were raised by Roxco time and again," the claimant in Roxco had not waived its claims. Id. at 41. Plaintiff Englewood also cites the A Olympic case as support, in which the government argued that the contractor had waived his claim, but the court found otherwise. A Olympic Forwarder, Inc. v. United States, 33 Fed.Cl. 514, 521–22 (1995). The court in A Olympic Forwarder concluded that: "Plaintiff did not voluntarily relinquish its rights; on the contrary, it continually protested defendant's use of the gross weight standard throughout the term of the contracts which are the subject of this litigation (1990–1993)." Id. (footnote omitted). The court noted that the plaintiff in A Olympic was responsible for over 470 protests. Id. at 522 n. 17. In contrast with the plaintiffs in Roxco and A Olympic, in which the parties vociferously raised their claims, Englewood remained silent as to any OCAF rent increase claim, until its motion for reconsideration, when defendant and the court first heard that plaintiff believed it possessed another claim, heretofore unraised. Plaintiff's cited cases are distinguishable from the present facts, and do not assist plaintiff.

In an apparent attempt to justify the failure to raise an OCAF-based claim, plaintiff notes that section 524(c) of the MAHRA does not require an owner to request an OCAF rent adjustment, and argues that there was "no discussion" by the court of OCAF as an alternative basis for a rent increase, and "no direction" by the court to brief the OCAF issues. Plaintiff apparently believes it is the duty of the court, sua sponte, to raise plaintiffs own claims. The language of the MAHRA itself does not appear to require an OCAF rent increase request. *See* Pub.L. 106–74, Title V, Subtitle C, § 531, 113 Stat. 1109, 1113 (1999) ("the Secretary shall annually adjust the rents using an operating cost adjustment factor established by the Secretary (which shall not result in a negative adjustment)[.]"). However, as noted above, HUD's Section 8 Renewal Guide requires a request for both budget-based and OCAF-based rent increases from the owner. Mr. Samuelson was aware of HUD's Section 8 Renewal Guide, having cited it and attempted to comply with it in his August 21, 2001 letter to HUD, in which he made his request for a budget-based rent increase. To repeat, the Section 8 Renewal Guide states that:

> A. For rent adjustments for existing multi-year contracts, at least 120 days before the anniversary date of the contract, the Owner submits:
>
> 1. **OCAF Worksheet.** Attachment 3; or
>
> 2. **Budget.** If applicable, a budget based rent increase request in accordance with the requirements of HUD Handbook 4350.1, Chapter 7, and Attachment 5 of this Guide.

William C. Apgar, Assistant Secretary for Housing–Federal Housing Commissioner, *Section 8 Renewal Policy: Guidance for the Renewal of Project–Based Section 8 Contracts*, ch. 4, sec. 4–3A, at 2 (Jan. 19, 2001) (emphasis in original).

 At the pre-litigation, agency stage, Mr. Samuelson attempted to implement the budget-based rent increase provisions of the Section 8 Renewal Guide, and did not raise an OCAF-based rent increase with HUD, even in the alternative, which is further indicia of his waiver of an OCAF-based rent increase. Nor did plaintiff raise an OCAF-based claim with the court until the motion for reconsideration. The complaint, and plaintiff, were silent as to such a claim, through and including post-trial briefing. *See Casa de Cambio Comdiv S.A. de C.V. v. United States*, 291 F.3d at 1366 ("In any event, we conclude that we need not address Casa's agency theory because it was not properly raised. No mention of this theory appears in Casa's complaint. Under the circumstances, we hold that Casa waived any claim it may have against the government based on such a theory."); *Alpha I, L.P. v. United States*, 86 Fed.Cl. 568, 573, 2009 WL 712324, at *5 (Fed.Cl.2009) ("In defendant's Motion for Reconsideration, defendant raises, for the first time, a public policy argument. A party may not prevail on a motion for reconsideration 'by raising an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed.'" (quoting *Matthews v. United States*, 73 Fed.Cl. at 526) (other citations omitted)). The court requires that a claim be raised in a complaint by the plaintiff, tried by the plaintiff, and argued by the plaintiff, rather than relying upon the court, sua sponte, to direct that the parties, belatedly, include the OCAF issue in their post-trial briefing, as plaintiff seems to suggest in its motion for reconsideration.

Finally, plaintiff relies on *Principal Mutual Life Insurance Company v. United States*, 29 Fed.Cl. 157 (1993), *aff'd*, 50 F.3d 1021 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (Fed.Cir.1995), a case in which plaintiff argues that a "clear error of law" led to a reconsideration and reversal by the court. That case, however, is distinguishable from the present case. The court in *Principal Mutual* merely agreed with the government, that "the portion of the court's earlier opinion addressing advertising expenses has been rendered moot by a settlement of that issue." *Principal Mut. Life Ins. Co. v. United States*, 29 Fed.Cl. at 160, 162. In *Principal Mutual*, there was no indication of a claim being presented for the first time in a post-trial motion for reconsideration; in the present case, the parties have not settled the belated OCAF rent increase claim, or any

other claim, for that matter, such that the court's earlier decision on a claim is rendered moot. The *Principal Mutual* case does not assist plaintiff.

Although plaintiff argues that not receiving the OCAF-based rent increase was a "manifest injustice," plaintiff nevertheless demonstrated no interest or concern for an OCAF rent increase claim, prior to the motion for reconsideration. Rather than plaintiff taking responsibility for raising, providing evidentiary support and arguing an OCAF rent increase claim, plaintiff seems to believe that the court, upon rejecting plaintiff's budget-based rent increase claim, should have, sua sponte, raised an OCAF rent increase claim for the plaintiff. Plaintiff apparently believes that the court's failure to act as plaintiff's attorney in this regard was an "oversight," a "manifest error of law," and a "manifest injustice" to plaintiff, although Mr. Samuelson is an attorney himself, who had other counsel until December 2008, but now represents himself and plaintiff Englewood. As noted above, Mr. Samuelson cited to the HUD Section 8 Renewal Guide in his August 21, 2001 request for a budget-based rent increase. The Section 8 Renewal Guide addresses the budget-based rent increase and the OCAF rent increase at the same place in the Guide, yet the OCAF rent increase was not raised with HUD, even in the alternative, and was not raised with the court, until now. Also, as noted in the court's earlier opinion, subsequent to Mr. Samuelson's August 21, 2001 letter requesting a budget-based rent increase, Mr. Hayes signed a HAP contract renewal, thereby agreeing to the rents in the renewal contract. *Englewood Terrace Ltd. P'ship v. United States*, 84 Fed.Cl. at 654. The record similarly does not reflect that Mr. Hayes raised with HUD an automatic OCAF increase in rents.

The court concludes plaintiff has not diligently pursued an OCAF rent claim, but appears to have brought it to the court's attention only as an afterthought, following the court's denial of the plaintiff's budget-based rent increase. Plaintiff cannot argue for an OCAF rent increase in a motion for reconsideration, given that plaintiff never previously argued for, and the court was never asked to consider previously, an OCAF rent increase. Under these facts and circumstances, plaintiff cannot demonstrate a change in controlling law, the availability of previously unavailable evidence, or manifest injustice. *Matthews v. United States*, 73 Fed.Cl. at 526 ("Specifically, the moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice.") (citing *Griswold v. United States*, 61 Fed.Cl. 458, 460–61 (2004)); *see also Shirlington Limousine & Transp., Inc. v. United States*, 78 Fed.Cl. 27, 31 (2007) ("Where reconsideration is sought due to manifest injustice, the moving party can only prevail if it demonstrates that the injustice from the case is 'apparent to the point of being indisputable.'") (quoting *Pac. Gas & Elec. Co. v. United States*, 74 Fed.Cl. 779, 785 (2006)).

### CONCLUSION

For the foregoing reasons, plaintiffs motion for reconsideration is denied.

**IT IS SO ORDERED.**